ALBERT SOREL & another *vs.* RALPH D. BOISJOLIE & another.

Berkshire.    September 15, 1953. — November 9, 1953.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Easement. Way*, Private: creation, extent. *Land Court*, Appeal, Record, Requests and rulings. *Words*, "Sold."

A finding by the Land Court in a registration proceeding, that an easement of passage by implication had been created by the owner of a strip of land over a driveway leading to a street and located in the northerly half of the strip in favor of the southerly half of the strip and a barn partly located thereon by his conveyance, without mention of any easement, of the southerly half to a purchaser of an abutting lot on which the rest of the barn was located, was proper where it appeared that the driveway was visibly wrought on the ground, had been continuously used for many years up to the time of the conveyance as the only means of travel between the barn and the street, and was reasonably necessary for the use and enjoyment of the barn, and that the grantor was familiar with the premises. [516]
Neither the fact that a conveyance of a parcel of land was gratuitous, nor the fact that it was made by metes and bounds, would necessarily

negative creation by implication of an easement of passage from the granted parcel to a street over a driveway located on the grantor's remaining land. [518]

A decision of the Land Court properly finding that a conveyance of a portion of a strip of land on which a part of a barn was located to the owner of an abutting lot on which the rest of the barn was located had created by implication an easement of passage over a driveway located on the remaining portion of the strip and furnishing the only means of travel between the barn and a street should have limited the easement to the width of the driveway as existing at the time of the conveyance, and should have restricted the benefit of the easement to the portion of the strip conveyed except that such benefit should also extend to the entire barn during the existence of the barn. [518–519]

Requests for rulings presented at a hearing in the Land Court are not part of the record and have no standing on appeal from the judge's decision. [519]

PETITION for registration of land, filed in the Land Court on February 20, 1952.

The case was heard by *McPartlin*, J. From his decision the respondents appealed.

*Emil Ober*, for the respondents.

*Benjamin Apkin*, for the petitioners.

RONAN, J. Eliza A. Johnson in 1886 conveyed to Carrie S. Hicks a parcel of land on the southerly side of North Street in North Adams, said parcel having a frontage of 4½ rods on the street and a depth of 9 rods. This lot was lot 18 and was bounded on the west by lot 19 which Johnson in 1890 conveyed to Orman Hicks, the husband of Carrie S. Hicks. Both lots were of the same size. Orman in 1891 conveyed to one Arnold the westerly portion of lot 19 having a frontage of 60 feet on North Street, and retained title to the remainder of lot 19 which comprised a strip of land 14 feet 3 inches on North Street and 9 rods deep and ran along the westerly boundary of lot 18. Orman, as administrator of the estate of Carrie, who died in 1913, sold lot 18 to one Crosier. Orman then owned no land except the strip which he conveyed to one Page on April 29, 1918. Page conveyed the southerly half of this strip to Alice E. Bradbury on May 7, 1918, on the same day she obtained title to lot 18 from Crosier. She conveyed title to this lot and the southerly half of the strip to the present petitioners in 1946. The

respondents, by mesne conveyances since 1948, have title to that part of lot 19 sold by Orman Hicks to Arnold and also to the northerly half of the strip sold by Orman Hicks to Page in 1918.

The only controversy between the parties is whether the petitioners have a right of way over the northerly half of the strip as found by the judge.

Carrie S. Hicks and her husband Orman built a house on lot 18. Orman in 1897 built a barn on lot 18 which extended for about 11 feet over on lot 19 and within 3 feet of the easterly boundary of the land he had sold to Arnold in 1891, now owned by the respondents. A driveway approximately 10 feet in width leads to North Street from the barn over part of the southerly half and the entire length of the northerly half of the strip. The barn has been used continuously since its erection by owners and occupants of the petitioners' land. Horses and vehicles were formerly kept in it, and more recently it has been used as a garage and storage place for painting equipment owned by the petitioner Albert Sorel and used in his business. This driveway is the only existing way of travel between North Street and the barn. It has been used daily as a way between the barn and North Street since 1897. It has been maintained, repaired, and cleared of snow by the petitioners and their predecessors in title since 1918. The petitioners were not denied use of the driveway until 1951. The judge found that the "driveway is the same today as it was thirty years ago." The photographs show a wrought, well kept, clearly defined way with a grass border on either side running from the street to the barn.

Calvin Page knew of the use of the way from the time of its creation in 1897. He was familiar with the premises at the time he purchased the strip in 1918 and knew of the location of the barn, the existence of the driveway which was then wrought on the ground, and the use made of it. His deed to Alice Bradbury in 1918 of the southerly half of the strip contained no reference to the northerly half. Page died in 1936.

At the time the respondents purchased the property in 1948, they received from the executors of the estate of Elizabeth Page, the daughter of Calvin Page, a paper showing a sketch of the Page lot [1] and the entire strip of land divided in two parts, one carrying the notation "Sold this to Mr. L. E. Bradbury" and the other carrying the notation, "Retained North Portion." The following in the handwriting of Calvin Page, "Let Bradbury have use of this as long as we get along all right," is written on the sketch by the northerly portion of the way. This paper so far as appears was admitted in evidence without objection. It was found among the effects of Page's daughter. Neither the petitioners nor Alice Bradbury had any knowledge of this paper until it was put in evidence at the trial in the Land Court.

The location of the way was apparent and visible. It was in continuous and daily use for persons or vehicles travelling between the street and the barn. It was reasonably necessary for the use and enjoyment of the barn. After Page became the owner of the strip, he divided it into two equal parts and conveyed the southerly one to Alice Bradbury. The premises conveyed to her were described in the deed by metes and bounds and no mention was made of any rights over the northerly half of the strip.

The judge properly found that an easement by implication had been created over the way located in the northerly half. Where during the common ownership of a parcel of land an apparent and obvious use of one part of the parcel is made for the benefit of another part and such use is being actually made up to the time of severance and is reasonably necessary for the enjoyment of the other part of the parcel, then upon severance of the ownership a grant to continue such use may arise by implication. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402. *Jasper* v. *Worcester Spinning & Finishing Co.* 318 Mass. 752. *Joyce* v. *Devaney,* 322 Mass.

---

[1] This lot was the same as the one sold by Orman Hicks to Arnold in 1891 plus the northerly half of the strip which was conveyed by Hicks to Page in 1918.

544.　17 Am. Jur., Easements, § 33.　Tiffany, Real Property, §§ 779–782.　155 A. L. R. 543.

The sketch made by Page with his accompanying written statement was apparently admitted, see *Orpin* v. *Morrison*, 230 Mass. 529, 532–533; *Bond* v. *Orr*, 266 Mass. 475, 480–481; 165 A. L. R. 567, to show his intent in conveying the southerly half of the strip to Alice Bradbury.　It was said in *Dale* v. *Bedal*, 305 Mass. 102, 103, that the origin of implied easements "must be found in a presumed intention of the parties, to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable."　See also *Krinsky* v. *Hoffman*, 326 Mass. 683, 687–688.　The paper upon which the sketch was made bore no date and there was no evidence when it was made.　The existence of this paper was unknown to the petitioners or their predecessors in title.　Its reference to L. E. Bradbury was in error as the grantee was Alice Bradbury.　The notation that the lot was sold to him would seem to indicate that the sketch was made after the transfer.　The paper was an item of evidence to be considered with the other circumstances involved as stated in *Dale* v. *Bedal*, *supra*, and as one of the various factors listed in Restatement: Property, § 476.　Indeed, it has been said in said § 476, comment a, that "The inference [of the intention of the parties] is drawn from the circumstances under which the conveyance was made rather than from the language of the conveyance."　See Am. Law of Property, §§ 8.31, 8.33.　The judge after weighing all the evidence came to the conclusion, as he properly could, that the fair inference from all the facts was that an easement by implication was granted and that the use of the way was not permissive.

The respondents contend that, as no consideration was paid for the conveyance to Alice Bradbury, no easement was granted to her over the northerly half of the way.　The judge found that she did not pay anything to Page for the conveyance and that as far as she knew nothing was paid;

that her husband conducted all the negotiations with Page relating to the transfer of the title to her; and that there "was no evidence as to the negotiations between Page and L. E. Bradbury." The finding falls short of proving that Page received no consideration. We assume the deed was sealed. A seal imports consideration, *Chem-Lac Products, Inc.* v. *Gerome*, 327 Mass. 394, and Page referred to the property as "sold" in the paper upon which he had drawn the sketch. It has been said that this term imports a transfer for a consideration. *Merchants Discount Co.* v. *Esther Abelson, Inc.* 297 Mass. 517. But while the absence of consideration was an important circumstance, "the fact that a conveyance is gratuitous does not necessarily rebut the implication of an easement in favor of the conveyee." Restatement: Property, § 476, comment e. Powell, Real Property, § 411.

That the conveyance to Alice Bradbury was made by metes and bounds would not necessarily negative the creation of an implied easement if the other necessary elements were present in the case. *Carlton* v. *Blake*, 152 Mass. 176, 179. *Hurley* v. *Guzzi*, 328 Mass. 293, 295.

The easement did not extend over the entire width of the northerly part of the strip. The way which was located on this portion of the strip was about 10 feet in width and was the way which the parties contemplated at the time of the conveyance as the one over which the grantee Bradbury was to have a right of passage. The decision of the Land Court should have limited the way to this width. *O'Brien* v. *Murphy*, 189 Mass. 353. *Lipsky* v. *Heller*, 199 Mass. 310. *Dunham* v. *Dodge*, 235 Mass. 367.

The easement over the northerly portion was created for the benefit of the southerly portion of the strip. Page never had any title to lot 18 and the easement was not extended for the benefit of this lot. *Davenport* v. *Lamson*, 21 Pick. 72. *Randall* v. *Grant*, 210 Mass. 302. *Cooley* v. *Boston & Maine Railroad*, 303 Mass. 371, 374–375. The way was created by Orman Hicks for the use and benefit of the barn which he built in 1897 and was employed continuously there-

after as a means of travel between the barn and the street. The way would have little value if it did not accomplish its primary object of serving the entire barn or if it were restricted in its use to the part of the barn which is located upon the southerly half of the strip. Page, who was familiar with the entire situation and knew that a substantial part of the barn was located on the southerly half of the strip when he conveyed that half to Bradbury in 1918, did not convey any easement as appurtenant to lot 18 as a whole, yet it is plain that it was contemplated that the same use which had been made theretofore over the northerly half of the strip for the benefit of the entire barn should continue while this structure stood. *Cotting* v. *Boston,* 201 Mass. 97. *Union National Bank* v. *Nesmith,* 238 Mass. 247. See *Hurley* v. *Guzzi,* 328 Mass. 293.

The requests for rulings are not open on appeal from the decision of the Land Court. They are not a part of the record and have no standing on appeal. We do not consider them. *Harrington* v. *Anderson,* 316 Mass. 187. *Paul* v. *Lee,* 321 Mass. 10, 12.

The decision of the Land Court must be modified by limiting the right of way to the existing way on the respondents' land and by restricting the right of way to use for the benefit of the southerly half of the strip, except that the right of way for the benefit of the entire barn is to continue during the period that this structure exists. As so modified the decision is affirmed.

*So ordered.*