FRANK J. CUMMINGS & another *vs.* MARIA D. FRANCO.

Bristol. October 29, 1956. — April 4, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, & WHITTEMORE, JJ.

*Easement. Deed,* Construction.

The facts that water was supplied from a highway main to the rear house of two houses on a single parcel of land abutting the highway by a pipe running through the cellar of the front house, where a separate meter for that supply was installed, that electricity was supplied to the rear house by a wire running from the highway over the front land and attached to the front house, that such facilities were open and obvious, and that their continued maintenance was reasonably necessary to the use and enjoyment of the rear house, justified conclusions that upon a conveyance of the rear portion of the property by a deed not mentioning such facilities an easement in the front portion of the property for their continued maintenance arose by implied grant and that one who subsequently acquired title to the front portion of the property acquired it subject to that easement.

BILL IN EQUITY, filed in the Superior Court on October 18, 1955.

The suit was heard by *Hurley,* J., on a master's report.

*Thomas F. McGuire,* (*Preston H. Hood, Jr.,* with him,) for the plaintiffs.

*Philip Goltz,* for the defendant.

WILLIAMS, J.   This is a suit in equity to enjoin the inter-
ference by the defendant with the exercise of rights in the
nature of easements appurtenant to the plaintiffs' land in
the adjoining land of the defendant.   The facts are reported
by a master whose report has been confirmed.   Both the
plaintiffs' and the defendant's lands were formerly part of a
single tract owned by Thomas W. Smith and Alice R. Smith,
husband and wife.   The tract extended from Riverside
Avenue, a public highway in the town of Somerset, on the
west to the Taunton River on the east.   It was conveyed to
the Smiths on November 20, 1913.   About 1925 the Smiths
who lived in a house on the front or westerly part of the
property built a second house on the rear portion which
abutted on the Taunton River, and a garage with driveway
from Riverside Avenue.   The town supplied water to the
front house from a main on Riverside Avenue.   When the
rear house was built the Smiths continued the water pipes
from the cellar of the front house to the rear house.   The
water supplied for both houses was measured by a meter in
the cellar of the front house.   Telephone and electric light
wires which came in from Riverside Avenue were carried to
the rear house by way of the front house to which they
were attached.   In July or August, 1944, a second water
meter was installed in the cellar of the front house and there-
after the water supply for the rear house ran through the
new meter and only the water for the front house was regis-
tered on the old meter.   On August 17, 1944, the situation
as to the water pipes and utility wires being as described,
Mrs. Smith, who had become sole owner of the property
after her husband's death on October 9, 1938, conveyed the
easterly or rear portion of her land which bordered on the
river to the plaintiffs, husband and wife, as joint tenants.
Her deed recited that the conveyance was made "Together
with the right to use the driveway as it now stands to pass
to and from the above described premises by vehicles or
otherwise over land of the grantor to Riverside Avenue,"
and "with and subject to water privileges mentioned" in
the deed of Phoebe A. Davenport et al. to Thomas W. Smith

and Alice R. Smith dated November 20, 1913, by which the Smiths had derived their title. The westerly line of the premises conveyed to the plaintiffs ran through the garage above mentioned, which was "partitioned off in accordance with the deeds [*sic*]." On September 1, 1944, Mrs. Smith sold the front parcel to one Evelyn Dawn subject to the right of way described in the prior deed to the plaintiffs and "with and subject to water privileges mentioned" in the deed of November 20, 1913, from Davenport et al. to the Smiths. Evelyn Dawn continued to own the front parcel from September 1, 1944, until July 18, 1952, when she sold it to the defendant subject to the said water privileges.

The plaintiffs assert rights to the maintenance and use of the water pipes and wires leading to their house over the defendant's land as they existed at the time they purchased the property from Mrs. Smith. The defendant denies the existence of any easement and by way of counterclaim contends that her "water privilege" includes the right to pass over the plaintiffs' land to the Taunton River. The master found that the defendant has no right to pass over the plaintiffs' land to the river and that the "water privilege" to which the deeds referred was a right granted in 1896 to the owners of land south of the Smith tract to draw water from a well on the northerly boundary of the tract, which well is not now in use.

There is no present dispute over the right of way from Riverside Avenue to the plaintiffs' land nor in respect to the maintenance of telephone wires, as they are no longer attached to the front house but are carried to the rear house by means of a pole located on land of a third party, immediately south of the plaintiffs' land.

The principal controversy is over the water pipes and electric wires. The master found "from the facts and circumstances surrounding the splitting up of the property," and without reliance on the testimony of Mrs. Smith, that when she "divided the land in 1944, she intended that the Cummings' [plaintiffs'] land should have the right to the

use of the utilities as they then were . . . that the situation, as then made, should continue," and that "owing to the physical structure and location of the land . . . [she] installed these utilities in her front land for the use and benefit of the rear part of her land." He found that "all parties to the arrangement, Mrs. Smith, Evelyn Dawn and the Cummings, knew and understood" Mrs. Smith's intent to benefit the rear house; that "the present conditions existed all during the nearly eight years occupancy by Evelyn Dawn, with her full knowledge and approval, and during the nearly three years occupancy of the defendant, without any official action or protest being made by anyone until the late summer of 1955, after a dispute had arisen as to the defendant's right of access to the shore of the river; . . . [and] that the maintenance of existing conditions was, and is, absolutely necessary to the use of their house by the plaintiffs." Neighbors of the plaintiffs to the north and south of their property have refused permission for the installation of water pipes and electric wires over their land. In conclusion the master found that "in so far as it is a question of fact . . . the conveyance to Frank J. Cummings and Thelma H. Cummings carried with it an implied grant of easement to have the electric light wires and the water meter and water pipes maintained in their then positions, and that the land retained by Mrs. Smith (later conveyed to Evelyn Dawn, and then to the defendant) became subject to that easement."

A final decree was entered dismissing the plaintiffs' bill and the defendant's counterclaim, from which decree only the plaintiffs appealed.

If "during the common ownership of a parcel of land an apparent and obvious use of one part of the parcel is made for the benefit of another part and such use is being actually made up to the time of severance and is reasonably necessary for the enjoyment of the other part of the parcel, then upon severance of the ownership a grant to continue such use may arise by implication." *Sorel* v. *Boisjolie*, 330 Mass. 513, 516. *Gorton-Pew Fisheries Co.* v. *Tolman*, 210

Mass. 402, 409–412. *Dale* v. *Bedal,* 305 Mass. 102, 103. *Jasper* v. *Worcester Spinning & Finishing Co.* 318 Mass. 752, 756. *Joyce* v. *Devaney,* 322 Mass. 544, 549. *Wiesel* v. *Smira,* 49 R. I. 246. Restatement: Property, §§ 474, 476. Tiffany, Real Property (3d ed.) §§ 779–788. The easement would be created because of the presumed intention of the grantor as shown by the instrument of conveyance and the situation and circumstances with reference to which it was executed. *Gorton-Pew Fisheries Co.* v. *Tolman, supra,* page 411. Evidence of an open and permanent use of the land retained by the grantor existing at the time of the severance combined with evidence that the continuance of the use is reasonably necessary for the beneficial enjoyment of the land conveyed is commonly held sufficient to prove by implication the grantor's intention. The conclusion of the master that a grant to the plaintiffs of easements appurtenant to the plaintiffs' land was intended by Mrs. Smith is supported by his subsidiary findings. At the time of the conveyance water was being supplied from the highway water main to the rear house by pipes running through the cellar of the front house and through a separate meter which she had caused to be installed. Electricity for power and light was being conducted to the rear house by wires over the front land which she had attached to the outside of the front house. The maintenance of the pipes and wires was open and obvious. It was inferable that, in the circumstances, a continuance of supply of town water and electricity was reasonably necessary for the beneficial use and enjoyment of the rear house and land. The master's finding of absolute necessity, while not required, imported a finding of such reasonable necessity. His conclusion that rights to the maintenance and continued use of the existing water pipes and wires were impliedly granted to the plaintiffs by the deed of Mrs. Smith was justified.

Whether in the absence of actual or constructive notice the easements in the servient tenement would have been extinguished when it was purchased by the defendant need not be considered. The maintenance of the pipes and

wires was of such a character that their use was obvious to the purchaser and she took title subject to the plaintiffs' easements. *Ingals* v. *Plamondon,* 75 Ill. 118, 124. *Douglas* v. *Jordan,* 232 Mich. 283, 288–289. *McCleary* v. *Lourie,* 80 N. H. 389, 392–393. *Ford* v. *White,* 179 Ore. 490, 496–497. *Wiesel* v. *Smira,* 49 R. I. 246, 251–252. See *Jasper* v. *Worcester Spinning & Finishing Co.* 318 Mass. 752, 756; *Foot* v. *Bauman,* 333 Mass. 214, 217–218; Tiffany, Real Property (3d ed.) § 828. Restatement: Property, § 476, comment j, illustrations 9, 10.

The final decree is reversed. In its stead a final decree is to be entered with costs to the plaintiffs enjoining the defendant from interference with the maintenance of the water pipes and electric wires leading to the plaintiffs' land.

*So ordered.*