JOHN VAN SZYMAN & another *vs.* TOWN OF AUBURN
& others.

Worcester.   November 7, 1962. — February 8, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK,
& SPIEGEL, JJ.

*Easement. Drain. Water. License. Real Property,* Encumbrance, Dedi-
cation, License. *Way,* Drainage. *Public Officer. Municipal Corpora-
tions,* Officers and agents, Drainage. *Trespass. Damages,* For trespass.

Where developers of lands on opposite sides of a way built the way and
before it was accepted by the town one developer was required to install
a drain in the way, and the drain installed extended into and discharged
water onto the land of the other developer, but the latter was not con-
sulted about the installation of the drain and gave no written or oral
permission therefor and never granted a drainage easement to the first
developer or to the town, and conveyed his land some years after in-
stallation of the drain to one who was unaware of its existence, neither
the first developer nor the town acquired a drainage easement in such
land by implication or by necessity.   [448–449]
Even if developers of lands on opposite sides of a way shared the cost
of building it and one developer purported to act for the other developer
in dedicating to the town a drain in the way which the first developer
was required to install before acceptance of the way by the town and
which extended into and discharged water onto the other developer's
land, the town acquired no drainage easement in such land through
dedication where it appeared that the other developer had done no act
of dedication and did not ratify the purported dedication by the first
developer.   [449]
If a landowner gave a parol license for maintenance of a drain running
into his land and discharging water onto it by failure to object to the
drain after learning of it, a subsequent conveyance of his land revoked
the license.   [449]
By a layout and acceptance as a public way of a way in which a drain
had been installed extending into and discharging water onto adjacent
land, a town acquired no drainage easement by implication in the land
where it was not shown that the layout included such an easement or
that there was any order of taking by the selectmen following the ac-
ceptance.   [449–450]
A landowner was not entitled to damages from a town for "repair, main-
tenance and improvement," "under the direction of" its highway
surveyor, a public officer, of a drain in a way extending into and dis-
charging water onto the landowner's premises, irrespective of whether
the way had been established as a public way.   [450–451]

A highway surveyor of a town, a public officer, in the circumstances was not liable to an owner of land even for nominal damages where, after the owner had suddenly blocked on his land a long established drain entering the land from an adjacent way and discharging water onto the land, the surveyor merely went on the land and unblocked the drain. [451]

G. L. c. 83, § 4, authorizing municipal officers in charge of highways to construct highway drains "through any land" refers only to land in which the municipality has acquired an easement for a drain, so that where a town had not acquired such an easement in land abutting a way its highway surveyor had no right to install and maintain in the land a drain extending from the way, even if the way was a public way. [451–452]

A highway surveyor of a town, a public officer, who personally installed in a way a drain which, without any easement in abutting land or the knowledge or permission of the landowner, extended into and discharged water onto the land, was liable for the resulting damage thereto. [452]

In a suit in equity by a landowner against the highway surveyor of a town, a master's finding that damages should be assessed in a certain amount "for the maintenance and operation" of a drain in a way which extended into and discharged water onto the plaintiff's land must stand where the master's report did not purport to show the basis of computation of damages and the defendant did not so act under Rule 90 of the Superior Court (1954) as to cause the record to show that adequate evidence did not underlie the finding of that amount. [452–453]

A conveyance of a lot on a way accompanied by a statement by the grantor to the grantee that a drain beginning in the way and extending across the lot and into abutting rear land of the grantor was "there for . . . [the grantee's] protection to keep the surface water off . . . [the lot] and to drain" the way and "had to be kept open" on the lot created, as appurtenant to the lot, an implied easement of drainage in the rear land. [453]

A conveyance of a lot on a way which created an implied easement appurtenant to the lot to channel onto abutting rear land of the grantor water flowing from the way through a drain on the lot, and a conveyance by the grantor shortly thereafter of his remaining land on the way to another grantee, which created an implied easement of drainage across the first grantee's lot onto the grantor's rear land, created the easement in the rear land only for the volume of water flowing at the time of such conveyances, and a "network of drains" installed in the way after such conveyances and connected with the drain on the first grantee's lot overloaded the easement in the rear land as against one who acquired title to that land after such conveyances. [453–455]

The owner of a lot having appurtenant to it a right to channel onto abutting land water flowing from a way through a drain on his lot could not, by a deed giving the town an easement to use the drain, enlarge the volume of water which it was permissible to discharge onto the servient land. [454]

The owner of land subject to a drainage easement in favor of abutting land was not entitled to block the drain by reason of overloading of the easement, and the owner of the dominant land was entitled to damages for the blocking from the owner of the servient land.   [455]

BILL IN EQUITY filed in the Superior Court on July 6, 1960. The suit was heard by *Quirico, J.,* on a master's report.

*Richard J. Sarapas* for the plaintiffs.

*Edward P. Healy,* Town Counsel, for the defendant Town of Auburn, submitted a brief.

*Walter J. Griffin,* for the defendants Hedlund, submitted a brief.

WHITTEMORE, J.    The plaintiffs in this bill in equity for a declaratory decree have appealed from the interlocutory decree which confirmed the master's report and overruled exceptions thereto and from the final decree which, inter alia, adjudged that the town of Auburn owns three easements of drainage into the plaintiffs' land and that Walter H. and Phyllis L. Hedlund, owners of adjoining land, have an easement of flow in one of the drains, ordered the plaintiffs to unplug the drains and ditches, enjoined further obstruction, and awarded damages of $500 to the Hedlunds.

The selectmen of the town, its highway surveyor, Raynard E. Whitcher (misdescribed in the bill as highway superintendent[1]), the building inspector, and a mortgagee of the Hedlund land are also parties defendant.

The approximate locations of the three lines of drainage are shown on the sketch herewith.    In the Van Szyman parcel there is swampy land and a pond.    The natural flow is northerly and easterly from the higher surrounding land onto this parcel.

At relevant times the Van Szyman parcel, White Terrace, lot 8 and other lots on White Terrace and on Chestnut Avenue were owned by Edward A. and Annie M. White.    Land abutting Chestnut Avenue on the southeast was, at such times, owned by Mary J. L. Pond Snyder.

Before the acceptance of Chestnut Avenue the abutting

---

[1] The answers admit the fact as misstated, but the parties appear to have accepted the finding of the master as to the office held.

owners (the Whites and Snyder) owned that half of it adjacent to their other land.

Chestnut Avenue was accepted by the town on May 26, 1952. White Terrace was accepted sometime in 1954. There is no finding of any act of taking on behalf of the town after the acceptance of the ways by the town at town meetings. See G. L. c. 82, §§ 23, 24; c. 79, §§ 1, 3.

The Van Szymans bought their parcel from the Whites on March 7, 1957. They knew of none of the drains prior to the purchase. The male plaintiff (Van Szyman) discovered the Hedlund drain and drain No. 1 in the spring of 1957. In the summer of that year he found "a network of drains" in White Terrace connected with the Hedlund drain. In the summer of 1959, he came upon the trunk drain connected with drain No. 1 and also discovered drain No. 2.

In 1957, after discovering drain No. 1 and the Hedlund drain, Van Szyman consulted his lawyer and the selectmen and talked with Mrs. White. He met with the selectmen and Whitcher, and was shown a plan with the drains on it, and told that the town maintained them and that he was not to block them. He also talked with Walter H. Hedlund (Hedlund).

In December, 1959, Van Szyman received a permit to build a house to be located between the Hedlund line and the pond. He began work in April, 1960, found that water from the Hedlund drain pipe filled the trenches being dug, and, after consulting his lawyer, caused the drain to be plugged at the end of the pipe. Ensuing action included a letter from the selectmen "to void" the building permit. Thereafter, early in May, 1960, Van Szyman blocked drains Nos. 1 and 2. Shortly thereafter Whitcher, after consulting with the selectmen, sent his crew onto the premises to unblock these drains. After this work was done he entered the premises to inspect it. The bill of complaint was entered July 6, 1960.

1. *Drain No. 1.* Chestnut Avenue was built by Snyder and Edward A. White (White) in 1951 and 1952, with costs shared between them. White built five or six houses on his lots on Chestnut Avenue. Before the way was accepted by

the town it was inspected by the planning board, and Snyder was required to and did install drains at Wellman and June streets, the trunk line of drainage, and drain No. 1.  The Whites were not consulted about the installing of the drain, gave no written or oral permission at any time, and never granted an easement to Snyder or to the town.  They had knowledge of the existence of the drain in 1954 and made no complaint.

The master found that so far as it is a question of fact neither the town nor Snyder acquired an easement by implication or necessity and the drain is in violation of the rights of the Van Szymans.  This finding is right and the decree establishing the easement is in error.

The acceptance of the way was of importance to the Whites as well as to Snyder.  But the Whites did nothing to bind their land.  There was no act of dedication by them. See *Horn* v. *Crest Hill Homes, Inc.* 340 Mass. 362, 365. Conceivably it could be found that Snyder purported to act for the Whites in building the drain and in a dedication of it to the town as a means of securing the acceptance of the way.  The findings, however, do not permit a conclusion that if there was such a purported dedication it was ratified.  .The failure to object after knowledge of the drain imports at the highest no more than a parol license.  There was no conveyance in connection with which an easement by implication could arise.  *Chelsea Yacht Club* v. *Mystic River Bridge Authy.* 330 Mass. 566, 568.  Even an express parol license to use land may be revoked at any time. *Morse* v. *Copeland,* 2 Gray, 302, 305.  *Home Inv. Co.* v. *Iovieno,* 243 Mass. 121, 125.  *Mason* v. *Albert,* 243 Mass. 433, 437.  See *Baseball Publishing Co.* v. *Bruton,* 302 Mass. 54, 58.  There is, therefore, no basis for a claim of estoppel or laches.  *Home Inv. Co.* case, *supra.*  *Scioscia* v. *Iovieno,* 318 Mass. 601, 604.  Compare *Levin* v. *Rose,* 302 Mass. 378. The conveyance in 1957 to the Van Szymans revoked the license, if any.  *Scioscia* case, *supra,* p. 603.

There is no finding or basis for the conclusion that there was a taking of the fee or any easement in the land compris-

ing the way in connection with which an easement of drainage by implication might arise.   There is nothing to show that the layout of the way included the drainage easement. Indeed, the facts found do not show any basis for inferring that there was an order by the selectmen (within thirty days after the town meeting which accepted the way [G. L. c. 82, § 23]) for the purpose of taking an easement, or the fee, in the land comprising the way (G. L. c. 82, § 24; c. 79, § 1), or a recording of such an order at the registry of deeds within thirty days thereafter (G. L. c. 79, § 3).[2]   *Watertown* v. *Dana,* 255 Mass. 67, 70–72.   *Radway* v. *Selectmen of Dennis,* 266 Mass. 329, 333–335.   *Walker* v. *Medford,* 272 Mass. 161. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 6–8.   *Loriol* v. *Keene,* 343 Mass. 358, 360, 362.

The Van Szymans are not entitled to recover damages in respect of drain No. 1.   The master found that they sustained $400 damage from the maintenance and operation of this drain.   No ground is shown for assessing this damage against the town.   Such ground does not exist in the finding that the town has maintained, repaired, and improved both Chestnut Avenue and White Terrace since their acceptance, including in the work "the repair, maintenance and improvement of drains and catch basins" therein.   This finding is qualified by the accompanying finding that "[t]his work has been done under the direction of . . . Whitcher, highway surveyor."   The town is not liable for the conduct of this public officer in the performance of his duties.   G. L. c. 41, §§ 1, 62; c. 84, § 7:[3]   *Shea* v. *Lexington,* 290 Mass. 361,

---

[2] The case does not turn on whether Chestnut Avenue or White Terrace are public ways.   The town claimed that they are not.   The basis of the contention does not appear.   The master found to the contrary based on the acceptances by the town and the conduct and assertions of town officials.   On the testimony of an attorney who had examined the records at the registry of deeds the master found that there is no deed on record from the Whites or their predecessors in title to the town "or a taking by the town . . . of any easement or rights of drainage" in land of the Van Szymans.   This does not expressly foreclose a record of a taking of the land constituting the way, but there is no showing thereof in the facts found.

[3] General Laws c. 41, § 62:  "If a highway surveyor be chosen, he shall have the exclusive control of the ordinary repair of public ways in his town without being subject to the authority of the selectmen."   Chapter 84, § 7:  "Surveyors of highways and road commissioners shall remove whatever obstructs the public ways within their respective towns or districts, or endangers, hinders or incommodes persons traveling thereon . . . ."

367–371.   *Trum* v. *Paxton,* 329 Mass. 434, 438, and cases
cited.   *Fulton* v. *Belmont,* 333 Mass. 64, 67–68.   Compare
*Ryder* v. *Lexington,* 303 Mass. 281, 285–290; *Wishnewsky* v.
*Saugus,* 325 Mass. 191, 195.   We see no ground for holding
the town liable for what the highway surveyor did in Chest-
nut Avenue whether it was, or was not, a public way.

There is no finding of any specific action by Whitcher in
respect of drain No. 1 prior to May, 1960, when Van Szyman
plugged it and Whitcher, shortly thereafter, unplugged it.
We conclude that Whitcher gave routine attention to the
drain and its catch basins.   We hold that such a public
officer in thus performing his duties does not act at the risk
that what appear to be town drains in existing ways have
not in law been established as such.   There is no implica-
tion that any personal act of his prior to unplugging the
drain invaded the Van Szyman land or increased the burden
thereon beyond that originally imposed by Snyder.   See
*Trum* case, *supra,* 438–440; *Fulgoni* v. *Johnston,* 302 Mass.
421, 423.

There is no finding of damage from the trespass to un-
plug the drain nor any basis for concluding that it was
more than nominal.   In the circumstances, including Van
Szyman's sudden blocking of this long established drain,
justice does not require that an award of nominal damages
be made.

2. *Drain No. 2.*   Sometime during the year 1955, the de-
fendant Whitcher installed drain No. 2 without the knowl-
edge or permission of the Whites.   The master found that
so far as it was a question of fact the town acquired no ease-
ment by grant, necessity or implication.   There is no show-
ing of a taking.   The town contends that this installation
was authorized by G. L. c. 83, § 4.[4]   There is nothing in this
even if Chestnut Avenue is a public way.   The statutory
authority, certainly in respect of permanent installations,

---

[4] "The . . . officers having charge of highways in any city or town may
construct ditches or drains for the purpose of properly draining any highway,
and may carry water away from any highway and over or through any land as
they may deem necessary for public convenience or for the proper care or con-
struction of such highway, and may purchase or take by eminent domain under
chapter seventy-nine, on behalf of the . . . city or town, such land or interest
therein as may be necessary therefor."

is to construct drains "through any land" in which the municipality has taken or purchased, or is taking or purchasing, the necessary interest. See *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 7–8. G. L. c. 84, § 10. St. 1917, c. 329, §§ 1, 2. No question of emergency action is involved. The plaintiffs are entitled to injunctive relief.

For the reasons stated in point 1, *supra,* the town is not liable for damages caused by this drain. The defendant Whitcher, however, acted affirmatively and, we conclude, in person, in excess of his statutory powers in building it. He is liable for the resulting damage. *Barry* v. *Smith,* 191 Mass. 78, 86–87, 88–89. *Moynihan* v. *Todd,* 188 Mass. 301. See *Trum* v. *Paxton,* 329 Mass. 434, 438–440, and cases cited.

The master found that damages should be assessed "for the maintenance and operation of drain No. 2 [in] the sum of $200." An objection to the report by the town and its officers is that there are no subsidiary findings to justify the award of damages. The report fills twenty-one printed pages and contains detailed subsidiary findings in respect of liability.[5] The report does not purport, however, to show the basis of computation of this or other awards of damages.

The master found that a large amount of water flows through the drains, especially through the Hedlund drain in the spring when a pool collects near the pond and remains for several days. He found that in the spring the water is like a brook flowing from drain No. 1 toward the pond. He also found that at other times of year after storms are over the water which has flowed onto the land is absorbed within an hour or two.

As this was vacant land except for a small tool shed it is difficult to see how the land has been damaged by the transient presence of water or how the plaintiffs' use or enjoyment of it has been lessened. The plaintiffs are not entitled to recover the equivalent of rent for the adverse use of their land, or an amount in lieu of an award for its taking. The

---

[5] The order does not require subsidiary findings, having been made prior to July 1, 1961, when the amendment to Rule 86 of the Superior Court (1954) became effective.

town and its officers have not so acted, however, under Rule 90 of the Superior Court (1954) as to cause the record to show that adequate evidence (for example, of silting or erosion) does not underlie the ultimate finding of damage, and it must stand, as against the defendant Whitcher.

3. *The Hedlund Drain.* On October 31, 1952, when the Whites conveyed lot 8 to the Hedlunds, the drain across lot 8 began in White Terrace. There was a hole filled with stones in each side of the way and the two holes were connected by a pipe which extended into lot 8 and there emptied into an open ditch which continued across the lot and into the land now of the Van Szymans. During the negotiations for the sale White told Hedlund that "the drains were there for his protection to keep the surface water off his property and to drain White Terrace. . . . [T]he pipe on his land had to be kept open."

The master's finding was justified that with this conveyance the Whites created an implied easement of drainage appurtenant to lot 8. *Jasper* v. *Worcester Spinning & Finishing Co.* 318 Mass. 752, 756. *Sorel* v. *Boisjolie,* 330 Mass. 513. *Cummings* v. *Franco,* 335 Mass. 639. See *Perodeau* v. *O'Connor,* 336 Mass. 472. Compare *Dale* v. *Bedal,* 305 Mass. 102.

The plaintiffs, admitting an easement by implication, do not contend that their lack of knowledge of the drain when they bought the servient tenement extinguished the easement. See *Cummings* case, pp. 643–644.

The plaintiffs are entitled to enjoin some of the flow through the Hedlund drain. These facts are found: The Whites sold all their land (nine lots) on White Terrace on November 21, 1952. Thereafter, Hedlund complained to White of water flowing onto his land from White Terrace and White deposited money with the new owner of White's former lots "for the installations of catch basins in White Terrace, adjoining and opposite the Hedlund property." In 1953, the new owner of the nine lots "put in the necessary drainage, including the catch basins paid for by White." We conclude that this was the origin of the "net-

work of drains'' found by Van Szyman in 1957. The Hedlunds on January 21, 1954, gave the town a deed of easement to use the drain across lot 8.

None of the acts stated in the preceding paragraph enlarged the easement flow onto the Van Szyman land. We assume that the Whites with their conveyance to the new owner in November, 1952, created an implied easement of drainage through the existing two sump holes into and across lot 8 and into the parcel later conveyed to Van Szyman. But the state of the drain at the time of the Whites' two conveyances in 1952 determines the permissible flow onto the Van Szyman land.

It is not expressly found that the two catch basins opposite lot 8 were built to replace the two stone filled sump holes which existed in October and November, 1952, but the inference is, we think, justified. There is no right to carry onto the Van Szymans' land water from the other catch basins constructed by the new owner.

The Whites, of course, for the period of their possession and subject to revocation, could license the flow of additional water from White Terrace onto their land. But they could not thereby enlarge the easement by implication which had arisen earlier when they conveyed the dominant tenements. The deed from the Hedlunds to the town could not operate to do so. When the Whites conveyed to the Van Szymans in 1957, they had already conveyed the dominant tenements so no reservation of an enlarged easement could be implied at the time of the 1957 deed.

The conclusion is unescapable that the easement is overloaded. The master found that ''after the catch basins were installed in White Terrace the surface water from White Terrace no longer flowed onto the Hedlund property as formerly . . . [but rather] into the catch basins in White Terrace.'' He also found that at some time after the Van Szymans purchased their land Hedlund installed a catch basin in the rear of his house at the point where the pipe from White Terrace terminated and emptied into an open ditch. We discern no basis, however, for concluding

that this catch basin increased the flow. It is the necessary inference that the adverse effect on the servient tenement of water gathered in the network of catch basins in White Terrace is greater than the effect of such water (or some of it) when it flowed, undirected, onto lot 8 and was, we infer, to some extent absorbed there. The plaintiffs, therefore, are entitled to an injunction against the town and against Whitcher. Rightfully or not, the town and its officials assert control. The injunction is to bar the emptying into either of the catch basins opposite lot 8, or otherwise into the easement pipe in lot 8, of water gathered in any pipes or drains in White Terrace other than the two drains which, as we conclude, have replaced the original sump holes.

The plaintiffs wrongfully blocked the Hedlund drain. Overloading of the existing easement did not justify that act. *Lincoln Park Amusement Co.* v. *Westport,* 339 Mass. 334, 337. Conceivably some of the damage found reflects the backing up of excess water which the Hedlunds by their deed to the town purported to allow to enter the drain. But there is nothing in the report or the plaintiffs' exceptions to show that there was any evidence on which damages could be apportioned. No error is shown in the award of damages of $500.

4. The interlocutory decree is affirmed. The final decree is reversed. A new final decree is to enter in accordance with this opinion but, if the selectmen shall signify to the Superior Court that they intend to ask the town to proceed promptly under the statutes to acquire easements of drainage for public ways at all or any of the locations of the three drains, the injunction barring the use of such drain or drains shall not be operative until the expiration of a reasonable time for such action as determined by the Superior Court.

*So ordered.*