NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-615

WILLIS A.M. HENDLEY & another[1]

vs.

ADAM DARISSE & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In the context of a neighbors' dispute, we consider the interpretation of two easements, one express and one implied. We affirm.

Background.  In 1999, a developer received approval for the ten-lot subdivision that included the plots of land at issue. The defendants' predecessor in title, Debra Simon, acquired her property in August 2000 and the plaintiffs purchased an adjoining parcel in May 2001.  Unbeknownst to either purchaser, the lot conveyed to Simon was configured such that it had insufficient frontage and was so close to the septic system on

_____

[1] Rubina Hendley.

[2] Lauren Darisse, aka Lauren Munighan.

the plaintiffs' lot it rendered that septic system noncompliant with the Massachusetts Environmental Code.

In 2004, the plaintiffs and Simon attempted to solve both problems with a land swap.  The agreement was memorialized in a plan endorsed as approval not required under subdivision control law (ANR plan) and deeds, all of which were recorded.  In the deed from Simon to the plaintiffs (2004 deed), Simon gave the plaintiffs some of her land near the plaintiffs' septic system, bringing the plaintiffs' system into compliance.  In exchange, the plaintiffs gave Simon some of their land along the street, providing frontage.

Also included in the 2004 deed were two easements from Simon to the plaintiffs.  Easement I, shown on the ANR plan as "Proposed Septic Access & Grading Easement," was "located on a trapezoid-shaped, grassy piece of land at the front of the [defendants'] property."  Easement II, shown on the ANR plan as "Proposed Septic Access Easement," was "located on a rectangular-shaped, grassy piece of land that is approximately 95 percent on the [defendants'] property's driveway" and was "adjacent to the [plaintiffs'] property's septic system slope-retaining wall."  The parties do not dispute the scope of Easement II.

Buried under the land conveyed by Simon to the plaintiffs was "approximately 45 feet" of her underground electric and

2

telecommunications utilities. Neither party was aware of the location of the underground utilities at the time of conveyance, and the 2004 deed does not mention them.

The defendants purchased their property from Simon in December 2016. At some point thereafter, a dispute arose between the parties about the scope of the easements and each party's access rights. The plaintiffs brought the dispute to the Land Court, and the case was tried before a judge. Relevant to this appeal, the judge found that Easement I benefited the plaintiffs' property and burdened the defendants' property "for the purposes of grading and for access in connection with the installation, repair, and maintenance of the septic system servicing the [plaintiffs'] property," and that the plaintiffs did not have access rights over the easement for any purpose other than those related to the septic system. The plaintiffs' access to the easement areas was limited to "any work reasonably necessary for them to exercise their permissible easement rights." The judge also declared "that an implied easement for the [defendants'] utilities benefits the [defendants'] property and burdens the [plaintiffs'] property." The plaintiffs appealed.

Discussion. As an initial matter, the defendants maintain that the notice of appeal was premature, and our analysis should end there. We disagree. The judgment entered on February 7,

3

2025, and the amended judgment entered on March 4, 2025.  Each time, the plaintiffs filed a timely notice of appeal.  Although the plaintiffs filed a motion pursuant to Mass. R. Civ. P. 60, 365 Mass. 828 (1974), contemporaneously with the second notice of appeal, that motion did not result in the entry of a new judgment; indeed, the judge noted that the "[j]udgment stands." Even if the notice of appeal had been premature, we would exercise our discretion to proceed to the merits because the issues are important and fully briefed, and we discern no prejudice to the defendants.  See Creatini v. McHugh, 99 Mass. App. Ct. 126, 128 (2021).  See also Reporter's Notes to 2025 amendment to Mass. R. A. P. 4 (a) (2) (B), Massachusetts Rules of Court, at 242 (Thompson Reuters 2026) (eliminating "trap for the unwary" in cases where notice of appeal filed before disposition of timely postjudgment motions).

Turning to the merits, the plaintiffs assert that Easement I was not limited to septic system access and instead gave them general-purpose access.  They also claim exclusive maintenance rights with respect to Easements I and II.  Finally, they contend that no implied easement exists with respect to the defendants' underground utilities.

1.  The scope of Easement I.  To determine the scope of Easement I, we must "determine the presumed intent of the grantor from the words used in the deed[], 'construed when

4

necessary in the light of the attendant circumstances.'" Hamouda v. Harris, 66 Mass. App. Ct. 22, 25 (2006), quoting Sheftel v. Lebel, 44 Mass. App. Ct. 175, 179 (1998). "The interpretation of a deed presents a question of law, which we review de novo." Skye v. Hession, 91 Mass. App. Ct. 423, 425 (2017). We review the findings of fact, made after a bench trial, for clear error. H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 13 (2022).

"When the language of the applicable instruments is 'clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different.'" Hamouda, 66 Mass. App. Ct. at 25, quoting Cook v. Babcock, 61 Mass. 526, 528 (1851). "[T]he words themselves remain the most important evidence of intention, but those words may be construed in light of the attendant circumstances and the objective circumstances to which [the words refer]" (quotations and citations omitted). Hamouda, supra.

We begin with language used in the 2004 deed, the instrument granting Easement I. See Sheftel, 44 Mass. App. Ct. at 179. It states, in relevant part:

> "Easement I -- an access and grading easement in the area shown on the aforesaid [ANR plan] as 'Proposed Septic Access & Grading Easement', said aforementioned easement area containing 1,129 s.f. of land, more or less, as shown on said [ANR plan].

5

. . .

Easement I is for the purpose of grading and regarding [sic] the Grantees' Septic Easement Area, and access thereto, in connection with the installation, repair and maintenance of the subsurface waste disposal system servicing and located on Grantees' Lot."

"[R]ead in its proper context, as part of [the 2004 deed] as a whole," Sheftel, 44 Mass. App. Ct. at 181 n.8, Easement I grants the plaintiffs access rights solely for septic-system-related purposes.  We agree with the trial judge that the 2004 deed "is clear and explicit," Cook, 61 Mass. at 528, in its description of Easement I:  it "is for the purpose of grading and regarding [sic] [the plaintiffs'] Septic Easement Area." The ANR plan referenced by the 2004 deed confirms our conclusion -- it identifies Easement I as a "Proposed Septic Access & Grading Easement."  See Labounty v. Vickers, 352 Mass. 337, 344 (1967) ("A plan referred to in a deed becomes a part of the contract so far as may be necessary to . . . determine the rights intended to be conveyed" [citation omitted]).

Though we can "begin and end our inquiry" with "the explicit language of the easement as set forth in [the 2004 deed]," Sheftel, 44 Mass. App. Ct. at 179, we note that the attendant circumstances also support our conclusion.  The plaintiffs' letters to the city concerning the 2004 deed express a desire to bring their septic system into compliance with the

6

addition of a "new small area at the street right-of-way line deeded for septic access and grading," referring to the area of Easement I. The trial judge also credited Simon's testimony at trial that she "intended to grant Easement I . . . to the [plaintiffs] for the sole purpose of accessing the easement areas in connection with maintaining the septic system." What is more, one of the plaintiffs testified at trial that the 2004 deed was executed to "fix the problems with our septic system." See White v. Hartigan, 464 Mass. 400, 414 (2013) ("due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses" [citation omitted]).

The defendants assert that whether Easement I is a general access easement is not properly before us. We disagree. According to the joint pretrial memorandum, "the parties knew the evidence bearing on the unpleaded issue was in fact aimed at that issue and not some other issue the case involved." Jensen v. Daniels, 57 Mass. App. Ct. 811, 816 (2003).

The plaintiffs' remaining contentions about the scope of Easement I relate to particular facts found by the judge. Because the evidence and inferences support those findings, we discern no error. See White, 464 Mass. at 414.

2. The plaintiffs' easement access rights. The plaintiffs' assertion of exclusive maintenance and surface area

7

rights over Easement I and Easement II is similarly unpersuasive.

The language of the 2004 deed governs the plaintiffs' responsibility to maintain the easements. See Sheftel, 44 Mass. App. Ct. at 179. The 2004 deed provides that "by accepting these Easements," the plaintiffs "hereby agree . . . to be responsible for the repair, loaming, seeding and maintenance of the Easement Areas." This provision defines the plaintiffs' maintenance responsibilities by reference to the work reasonably necessary for them to exercise their permissible easement rights. As we explained above, the plaintiffs' rights with respect to Easement I are for grading and other activities in connection with the installation, repair, and maintenance of the septic system. The plaintiffs do not dispute that their rights with respect to Easement II are "limited to . . . access to the septic system and for the inspection, maintenance, repair, and replacement of the slope-retaining wall."

3. The implied easement for underground utilities. "One claiming the benefit of an easement bears the burden of proving the existence of that easement on the servient estate." Hickey v. Pathways Assn., 472 Mass. 735, 753-754 (2015).

The problem of the defendants' utilities being under the plaintiffs' land arose when Simon conveyed the relevant piece of property to the plaintiffs in the 2004 deed. Before the

conveyance, those utilities were under the defendants' land. When a parcel of land formerly under common ownership is severed into two or more parts, and prior to severance a use was made of one part for the benefit of another, an implied easement may be created to continue the prior use. See Cummings v. Franco, 335 Mass. 639, 642-644 (1957).

An implied easement can be "found in a presumed intention of the parties, to be gathered from the language of the instruments when read in light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable" (citation omitted). Labounty, 352 Mass. at 344. Evidence of intent may be inferred from prior open and obvious use consistent with the claimed easement. Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 284 Mass 102, 108 (1933). "The controlling question is whether the circumstances of the severance demonstrate that the parties intended that the owner of one of the resulting parcels be able to make some use of the other parcel even though no express easement was recorded." Lavoie v. McRae, 102 Mass. App. Ct. 14, 19 (2022). If "during the common ownership of a parcel of land an apparent and obvious use of one part of the parcel is made for the benefit of another part and such use is being actually made up to the time of severance" and the continued use "is reasonably necessary for

9

the enjoyment of the other part of the parcel, then upon severance of the ownership a grant to continue such use may arise by implication." Cummings, 335 Mass. at 642, quoting Sorel v. Boisjolie, 330 Mass. 513, 516 (1953). See Cummings, supra at 642-643 (implied easements for lights, maintenance of electric fixtures, and supply of water and electricity were reasonably necessary).

The trial judge found that the defendants' continued underground use of the land that had been part of their parcel was reasonably necessary for the beneficial enjoyment of the land. The defendants therefore retained an implied easement in the underground utilities. See Cummings, 335 Mass. at 643; Flax v. Smith, 20 Mass. App. Ct. 149, 152 (1985) (implied easement for underground water and sewer services reasonably necessary). Our conclusion is not undermined by the fact that neither Simon nor the plaintiffs were aware of the location of the underground utilities and did not consider them at the time of the 2004 conveyance. See Cummings, supra at 644 (underground water pipes were "of such a character that their use was obvious to the purchaser and she took title subject to [an implied easement]"); Flax, supra at 153 ("What is required . . . is not an actual subjective intent . . . but a presumed objective intent of the grantor and grantee based upon the circumstances of the

10

conveyance").  The Restatement (Third) of Property (Servitudes) § 2.12 comment g (2000) is instructive:

> "g.  Underground utilities.  In situations where the prior use is for buried utility lines like sewer, water, drainage, or power lines, the parties may not know that one parcel is being used to benefit the other.  However, when the parcels are served by utilities, the parties reasonably expect that the conveyance will not terminate the right to continued utility services.  From the standpoint of the purchaser of the parcel served by the utility lines, continued utility service is part of the land package he believes he is buying.  From the standpoint of the grantor, whose retained parcel is served by the utility lines, the right to cut off her utility services is not part of the package she is selling."

Because the plaintiffs "knew that underground utilities serviced the properties in the subdivision" at the time of conveyance, we are not persuaded that the 2004 deed's silence on the matter undermines our conclusion.  See Jasper v. Worcester Spinning & Finishing Co., 318 Mass. 752, 756 (1945).  Simon's testimony at trial, credited by the trial judge, that she would not have agreed to the land swap if she knew that she or her successors would need to move those utilities further supports the existence of an implied easement.  See Lavoie, 102 Mass. App. Ct. at 19.

Finally, we disagree with the plaintiffs' assertion that the trial judge committed "clear error" in finding that the plaintiffs conveyed a portion of their underground utilities to Simon in 2004.  See White, 464 Mass. at 414 (clear error exists

11

only where there is "[a] definite and firm conviction that a mistake has been committed" [citation omitted]).

Judgment affirmed.

By the Court (Desmond,
Hershfang, & Brennan, JJ.[3]),

Clerk

Entered:  May 12, 2026.

---

[3] The panelists are listed in order of seniority.

12