LAVOIE vs. McRAE, 102 Mass. App. Ct. 14

 
 JOSEPH O. LAVOIE, JR., & another [Note 1] vs. JOHN A. McRAE.

102 Mass. App. Ct. 14
 September 8, 2022 - November 18, 2022

Court Below: Land Court
Present: Meade, Milkey, & Massing, JJ.

 

No. 21-P-1073.

Easement. Necessity. Real Property, Easement, Mortgage. Mortgage, Foreclosure. Practice, Civil, Summary judgment.

In the circumstances of a dispute between the owners of adjacent lots that were once held in common, in which the plaintiffs sought to establish that they held an implied easement over the defendant's lot that provided them a right of way to and from the parking area on their property, a Land Court judge erred in granting summary judgment in favor of the defendant based on the conclusion that no implied easement could have been created as a matter of law, where the circumstances of the severance of the original property into the two lots at issue (here, by the granting of a mortgage on one lot by a previous owner, who remained in possession of both lots) demonstrated an intention for the previous owner to reserve his right to use the shared driveway for access to the second lot's parking area, despite an absence of direct proof that the use of the shared driveway was continuous up until the severance; and where the record contained countervailing indications on the issue whether the easement was reasonably necessary for the plaintiffs' enjoyment of their property rights; accordingly, this court vacated the judgment and remanded the matter for further proceedings. [19-26]

Civil action commenced in the Land Court Department on May 21, 2020. 

 The case was heard by Howard P. Speicher, J., on motions for summary judgment.

 Michael R. Lavoie for the plaintiffs.

 Neil J. Berman for the defendant.

 MILKEY, J. This is a dispute between the owners of adjacent lots in Somerville that once were held in common. As detailed infra, motor vehicles can gain access to the parking area of one of the lots (42 Allen Street) only by crossing a portion of the other lot's (36 Allen Street) abutting parking area. The plaintiffs, who own 42 Allen Street, commenced this litigation against John A. McRae, the owner of 36 Allen Street, primarily to establish that 

 Page 15 

they hold an implied easement that provides them a right of way to and from their property. On cross motions for summary judgment, a Land Court judge ruled in favor of McRae after concluding that, as a matter of law, no implied easement could have been created. For the following reasons, we vacate the judgment and remand the matter for further proceedings.

 Standard of review. Our review of the evidence in the summary judgment record is de novo. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016). In considering whether the judge erred in allowing McRae's motion for summary judgment, we must view the record in the light most favorable to the plaintiffs, including by drawing all reasonable inferences in their favor. See id. The question we face is whether, viewing the summary judgment record in that light, a finder of fact could conclude that an implied easement had been created. [Note 2] If so, the judge erred in granting summary judgment for McRae.

 Factual background. We summarize the summary judgment record, reserving certain details for later discussion.

 1. The shared driveway. As noted, the two lots previously were held in common ownership and treated as one unified property. The principal building on the combined lots was a two-family residence built on the side of the property that now comprises 42 Allen Street. The only building on the 36 Allen Street side was a garage that was converted into a single-family residence by 1980 at the latest.

 Between the two buildings is a paved parking area that straddles the lots' boundary line. Only the 36 Allen Street side of the parking area has direct vehicular access from Allen Street, provided by a curb cut. As a result, vehicles cannot reach the 42 Allen Street paved area except by driving over a portion of 36 Allen Street. [Note 3] We refer to the relevant portion of the paved area 

 Page 16 

necessary for vehicular street access to 42 Allen Street as the "shared driveway," the term employed by the plaintiffs, the zoning board of appeals of Somerville (ZBA), and the judge. Use of the shared driveway for the benefit of both properties obviously did not present a problem when the lots were held in common ownership.

 2. The 2001 special permit. A former owner converted the garage at 36 Allen Street to a residence without required zoning approval. In 2001, after this zoning violation came to light, the then owner of both lots applied for a special permit to allow the garage to be used as a separate residence. In evaluating that application, staff of the planning board of Somerville expressed concern about whether there was sufficient off-street parking. They noted that the applicable zoning ordinance required off-street parking, which was particularly important because on-street parking was not available. [Note 4] However, after the then owner demonstrated that there was sufficient space in the paved area to park two cars from 36 Allen Street and four cars from 42 Allen Street, planning board staff recommended that the special permit be granted. [Note 5] 

 3. Del-Pinal's acquisition and mortgages. The last common owner of the two lots was Marco Del-Pinal, who purchased both lots on September 28, 2006. Shortly afterwards, Del-Pinal granted separate mortgages on each lot. Specifically, on October 27, 2006, Del-Pinal granted Wells Fargo Bank, N.A. (Wells Fargo), a mortgage for 36 Allen Street, and on December 28, 2006, Del-Pinal granted a mortgage for 42 Allen Street to a separate lender, ACT Lending Corp., doing business as ACT Mortgage Capital (ACT). Both mortgages included standard language through which Del-Pinal, as borrower, covenanted that "the Property is unencumbered, except for encumbrances of record." 

 4. Del-Pinal's expansion plans. Del-Pinal planned to add a bedroom to each residential unit at 42 Allen Street. Apparently because the existing building was a prior nonconforming structure, 

 Page 17 

the proposed addition required a special permit from the ZBA. Del-Pinal applied for a permit, but he also commenced construction before securing approval. [Note 6] A draft letter dated May 3, 2007 -- which was never finalized -- memorialized the planning board's recommendation that the ZBA deny Del-Pinal's permit application. Although the planning board's primary concern involved the aesthetics of the by-then substantially completed addition, whether there was sufficient off-street parking was also an issue. The planning board expressed its preference that a designated parking area be established at the back of the lot, and stated that "[a]n easement (between [eight]-[twelve] feet wide) must be recorded for the use of the shared driveway." [Note 7] The record indicates that Del-Pinal withdrew his application before the ZBA finalized its decision, and that the addition was left in a state of partial completion. 

 5. The mortgage foreclosures. Whether related to his failed expansion plans or not, Del-Pinal defaulted on his loans. An assignee of the ACT mortgage foreclosed on 42 Allen Street on October 24, 2007. The notice of foreclosure sale warned that the property would be transferred "subject to and with the benefit of all rights, rights of way, . . . [and] easements . . . which are in force and are applicable, having priority over said mortgage, whether or not reference to such restrictions, easements, improvements, liens, or encumbrances is made in the deed." A successor bank to the foreclosing entity sold 42 Allen Street to Marc Resnick on August 5, 2008.

 Meanwhile, Wells Fargo foreclosed on 36 Allen Street on March 13, 2008. As was true with respect to 42 Allen Street, the notice of foreclosure sale for 36 Allen Street included references to the transfer being made subject to any existing easements or other encumbrances whether recorded or not. McRae purchased 36 Allen Street from Wells Fargo on March 31, 2008.

 6. Resnick's development plans. As the new owner of 42 Allen Street, Resnick stepped in to complete the addition that Del-Pinal had begun. Toward that end, he applied for the required special 

 Page 18 

permit, which the ZBA issued in 2008 or 2009. [Note 8] Because Resnick did not own 36 Allen Street -- which still provided the only apparent means of vehicular access to 42 Allen Street -- the lack of off-street parking became an issue. As noted, Allen Street is not wide enough to accommodate on-street parking. Accordingly, as a condition of approving the addition, the ZBA required Resnick to obtain vehicular access to that lot by either of two means. The first would be to "secure an easement from [McRae] to provide access to the parking area." The second was to have a new curb cut added in front of 42 Allen Street. The first option proved problematic because Resnick and McRae were unable to agree on a mutually satisfactory price. The second option could not be accomplished because there was an existing storm drain where the new curb cut would be located and moving it would be "prohibitively expensive."

 Recognizing Resnick's predicament, on May 20, 2009, the ZBA excised from the special permit the condition requiring access for off-street parking. The ZBA explained its view that, even though the zoning ordinance apparently required off-street parking, it legally could approve the addition without the condition "[s]ince there is no increase in the number of units or bedrooms." [Note 9] The ZBA opined that off-street parking was not critical after all, due to the availability of public transportation in this neighborhood. [Note 10] Finally, the ZBA noted that Resnick had submitted a landscaping plan under which the paved area at 42 Allen Street would be replaced by "trees, bushes[,] and pervious materials." According to the ZBA, replacing the paved area in this fashion would "considerably increase the amount of landscaping on the site and [would] generally improve the appearance of the property and neighborhood." 

 In 2012, Resnick converted the two-family residence at 42 Allen Street into a two-unit condominium. Plaintiff Lavoie purchased one of the condominium units from Resnick in 2015. 

 Page 19 

Together with his wife, plaintiff Marilyn L. Petrowski, Lavoie purchased the other condominium unit from an intervening owner in 2019.

 7. Post-2009 use. The residents of 42 Allen Street continued to park on-site, and there is nothing in the record to suggest that the expected conversion of the paved area to landscaping ever occurred. Although the details are not entirely clear from the record, it appears undisputed that starting in 2013 or 2014, McRae entered into an informal oral agreement under which Resnick or others associated with 42 Allen Street paid McRae a $1,500 annual fee to drive across his property. In 2015, conflict ensued after McRae expressed his intent to raise the fee for using "[his] curb cut" [Note 11] to $2,000, warning that he would erect a fence between the properties to prohibit vehicular access to 42 Allen Street if that fee was not paid. After negotiations broke down, McRae carried out his threat. However, a couple of weeks later, a resident of 36 Allen Street drove into the fence and knocked it down. That incident, and the fact that residents of 36 Allen Street regularly cross the property line when they leave the property to get to the street, suggest that use of the shared driveway provides reciprocal benefits to the owners of the two lots. 

 At some point, the residents of 42 Allen Street stopped paying McRae to cross his property but continued to use the shared driveway. [Note 12] This litigation followed.

 Discussion. 1. The nature of an implied easement. An implied easement (also known as an "easement by implication") can be created by operation of law when the ownership of a unified property is severed into two adjacent parcels. See Kitras v. Aquinnah, 474 Mass. 132, 139-140, cert. denied, 137 S. Ct. 506 (2016). The controlling question is whether the circumstances of the severance demonstrate that the parties intended that the owner of one of the resulting parcels be able to make some use of the other parcel even though no express easement was recorded. Id. Such an intent generally will be found only where the parties seeking to benefit from the easement can prove that it is "reasonably 

 Page 20 

necessary" for their use and enjoyment of their land. [Note 13] Supraner v. Citizens Sav. Bank, 303 Mass. 460, 464 (1939). See Flax v. Smith, 20 Mass. App. Ct. 149, 152 (1985). [Note 14] Although mere "convenience" -- even "great convenience" -- does not rise to the level of reasonable necessity, something significantly short of "absolute physical necessity" can suffice. Supraner, supra at 463-464. For example, in Perodeau v. O'Connor, 336 Mass. 472, 474-475 (1957), the court upheld a finding that an implied easement had been created so as to allow vehicular access to a garage. 

 In some instances, a party will be able to demonstrate that an implied easement is absolutely necessary for the use and enjoyment of his or her property. This is true, for example, where the division of a parcel of land has left one of the resulting lots completely landlocked. See Kitras, 474 Mass. at 139. Where absolute physical necessity is shown, such proof alone generally is sufficient to find that an implied easement was created. [Note 15] After all, the theory goes, parties presumably did not intend to create a situation where their property would be rendered unusable. [Note 16] 

 Where absolute physical necessity cannot be shown, the propounding party must present other evidence that demonstrates that the parties intended to create such an easement at the time 

 Page 21 

ownership was severed, even though no such easement was recorded. See Perodeau, 336 Mass. at 474-475, and cases cited. The presumed intent of the parties is "to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable" (citation omitted). Id. at 474. To the extent that the proponent of the easement is relying on its actual use prior to severance, he or she must demonstrate that such use was not only open and obvious, but also that "such use [was] actually made up to the time of severance." Sorel v. Boisjolie, 330 Mass. 513, 516 (1953).

 2. The mortgage context. Here, the ownership of the lots was severed not by an ordinary sale, but by Del-Pinal's granting of the mortgage on 36 Allen Street to Wells Fargo. An implied easement has been recognized in such circumstances. See Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 284 Mass. 100, 106 (1933) ("at the time of a grant by mortgage deed an easement may by implication be created and the foreclosure of such a mortgage passes a right of easement so created to those deriving title to the premises through the foreclosure"). The granting of the mortgage served to pass title to 36 Allen Street to Wells Fargo, albeit with Del-Pinal retaining the equity of redemption until foreclosure. See id. at 106-107. In addition, prior to foreclosure, Del-Pinal remained in possession of both lots, and in that capacity, he retained the right to use the shared driveway to reach 42 Allen Street. The critical question at the heart of this case then is whether, at the time Del-Pinal granted Wells Fargo the mortgage (October 27, 2006), the parties to that mortgage intended Del-Pinal to retain his right to use the shared driveway for access to 42 Allen Street in the event the mortgage was foreclosed. See id. at 106-107. For the following reasons, we believe that the summary judgment record provides a sufficient basis for a fact finder to conclude that the parties intended for Del-Pinal to reserve that right.

 3. Continuity of use. The judge allowed McRae's motion for summary judgment based on two independent grounds, which we address in order. The first was that the plaintiffs failed to demonstrate that the use of the shared driveway was continuous up until the ownership of the lots was severed, which, as noted, occurred on October 27, 2006, when Del-Pinal granted the mortgage to Wells Fargo. Specifically, the judge pointed to the lack of 

 Page 22 

evidence that Del-Pinal, the last common owner, used the shared driveway to park at 42 Allen Street before the severance (that is, during the one-month period he owned the property prior to his granting the Wells Fargo mortgage). The judge highlighted that the plaintiffs did not offer evidence that the two-family residence at 42 Allen Street -- the subject of Del-Pinal's redevelopment plans -- was even occupied at that time. [Note 17] Although the record includes a photograph of what appears to be a construction vehicle parked at 42 Allen Street next to Del-Pinal's partially completed addition, McRae points out that because the photograph is undated, it may have been taken after the Wells Fargo mortgage already had been executed and, thus, would be irrelevant to the present issue.

 In our view, the judge applied an overly strict reading of the requirement for continuous use, at least under these circumstances. Drawing reasonable inferences in favor of the plaintiffs, a finder of fact could conclude that Del-Pinal likely parked at 42 Allen Street during the month in question, and that the shared driveway would have provided the only viable means of doing so. [Note 18] But in our view, one does not need to draw that factual inference to reach the same conclusion. The ultimate touchstone for whether an implied easement should be recognized is the presumed intent of the parties based on all the circumstances, not a mechanistic application of rules of thumb. See Zotos v. Armstrong, 63 Mass. App. Ct. 654, 657-658 (2005) (although plaintiff could point to isolated factors in support of implied easement, such intent was negated by language in deed with respect to express easement). Whatever specific use Del-Pinal did or did not make of 42 Allen Street during the fleeting period in question, it requires no stretch of imagination to conclude that someone in his position would not have thought that by granting a mortgage on 36 Allen Street, he thereby was giving up his legal right to use the shared driveway to reach 42 Allen Street in the event that Wells Fargo foreclosed. See Mt. Holyoke Realty Corp., 284 Mass. at 107.

 Page 23 

 Of course, this does not mean that a lender in Wells Fargo's position necessarily shared the same intent. But Wells Fargo can be charged with knowledge of "obvious and unescapable" site conditions, see Mt. Holyoke Realty Corp., 284 Mass. at 107, and the fact that the shared driveway provided the only viable means of vehicular access to 42 Allen Street is just such a condition (as the photographs of the site in the record make plain). Where contemporaneous site conditions would have revealed an established right of way, proof of actual use at the time of severance was not critical. See Perodeau, 336 Mass. at 475 (implied easement found where "right of way [to building] was open and obvious at the time there was a severance of the lots"). 

 While it is true that Del-Pinal covenanted to Wells Fargo that there were no unrecorded encumbrances at 36 Allen Street, the cases establish that even in the context of ordinary property transfers, such language is not by itself fatal. See Mt. Holyoke Realty Corp., 284 Mass. at 104, citing Brigham v. Smith, 4 Gray 297 (1855) (discussing how conveyance that leaves property landlocked can be "sufficient basis for the implication of an easement although the deed of conveyance contains a warranty against encumbrances"). Moreover, that language may have even less force in the mortgage context. [Note 19] In addition, the clause through which Wells Fargo expressly warned purchasers that 36 Allen Street may be subject to unrecorded encumbrances -- even if boilerplate -- can be read as an acknowledgement by Wells Fargo that such a possibility exists. Finally, we note that the fact that residents of 36 Allen Street enjoy some benefit from crossing onto 42 Allen Street weighs in favor of finding an implied easement. See Restatement of Property § 476 & comment h (1944) (presence of reciprocal benefits is factor favoring recognition of implied easement).

 In sum, we conclude that the judge erred in ruling that the 

 Page 24 

plaintiffs' claim to an implied easement was doomed by the absence of direct proof that Del-Pinal actually (and continuously) parked at 42 Allen Street prior to the Wells Fargo mortgage.

 4. Reasonable necessity. The second basis on which the judge allowed McRae's motion for summary judgment was that the plaintiffs could not prove that crossing 36 Allen Street was reasonably necessary to their use of their property. He observed that a new curb cut theoretically could be added in front of 42 Allen Street, which would obviate the need for the plaintiffs to use the existing curb cut and shared driveway. See Uliasz v. Gillette, 357 Mass. 96, 102 (1970) (no reasonable necessity where plaintiffs had alternative access to and egress from public way). While recognizing that this would entail additional expense, the judge reasoned that such costs could not render the easement reasonably necessary.

 However, under the case law, whether the availability of alternative access proves fatal depends on how difficult or expensive it would be to pursue such alternatives. If alternative access could be gained at "reasonable" additional expense, then an implied easement would not be found to be reasonably necessary. See Supraner, 303 Mass. at 463 (no implied easement should be found where "a substitute can be furnished by reasonable labor and expense"). At some point, however, the "necessary cost" that would be incurred in pursuing alternative access, "and the resultant diminution in the value[,] would be unreasonable and disproportionate to the value of that [property]." Mt. Holyoke Realty Corp., 284 Mass. at 103 (where demolition of staircase meant that floor of one building could be accessed only from adjacent building, implied easement found even though new staircase could have been constructed). See Restatement of Property § 476 comment g ("expense and effort necessary to secure a substitute by the conveyor may not be so disproportionate but that it may be assumed he was intended to suffer it, while like expense to the conveyee may warrant the inference that he was not intended to suffer it"). 

 As noted, the need to move the existing storm drain renders the option of creating a new curb cut in front of 42 Allen Street "prohibitively expensive," at least in the eyes of the ZBA. Because there is a basis in the summary judgment record on which a fact finder could conclude that adding a new curb cut would be unreasonably expensive, the judge erred when he ruled that the availability of this option precluded the plaintiffs from establishing that using the shared driveway was reasonably necessary. 

 Page 25 

 The judge also concluded that even if crossing over 36 Allen Street provided the only way for the plaintiffs to park at 42 Allen Street, this ultimately was immaterial because, as a matter of law, off-street parking itself is not a reasonable necessity, at least in urban areas where public transit options exist. Since many urban residences do not provide off-street parking, the judge's reasoning has some force. Indeed, in its 2009 decision relieving Resnick from having to provide off-street parking at 42 Allen Street, the ZBA itself expressed a dim view of the benefits that such parking provided in this particular area. [Note 20] 

 At the same time, there are also countervailing indications in the record. For example, in 2001, planning board staff stressed the importance of off-street parking at the site due to the lack of on-street parking in the vicinity, and in its initial grant of a special permit to Resnick, the ZBA required him to demonstrate that he had a legal right to park there. It also bears noting that even though the ZBA eventually relieved Resnick from having to prove such access, it remains true -- from all that appears in the current record -- that the city zoning ordinance generally requires that developers provide off-street parking for their development projects.

 In addition, we think it essentially self-evident that, at least in some circumstances, losing the ability to park on one's property could have a dramatic effect on the value of that land. See Mt. Holyoke Realty Corp., 284 Mass. at 103 (noting relationship between "necessary cost [of pursuing an alternative to the easement] and the resultant diminution in the value" of property). In fact, there is direct evidence in the summary judgment record that residents of 42 Allen Street were willing to make substantial annual payments to use the shared driveway.

 In light of these countervailing indications in the summary judgment record, "we are not prepared to conclude on the record before us and in the circumstances of this case that parking [at 42 Allen Street] is, as matter of law, more a convenience for the 

 Page 26 

plaintiffs rather than reasonably necessary for the enjoyment of their [property] rights." Harrington v. Lamarque, 42 Mass. App. Ct. 371, 376 (1997). Because "reasonableness of use [is] a question of fact," Tindley v. Department of Envtl. Quality Eng'g, 10 Mass. App. Ct. 623, 627-628 (1980), and the record includes evidence pointing in both directions, whether off-street parking was reasonably necessary to the use and enjoyment of 42 Allen Street is something appropriately resolved through factual findings made on a suitably developed trial record, not on summary judgment. [Note 21]

 5. Voluntary payments. McRae highlights the fact that, for several years, Resnick and various residents of 42 Allen Street -- including plaintiff Lavoie -- paid him to use the shared driveway. He suggests that this negates any claim that the plaintiffs held an implied easement. Although the judge did not rely on this ground when he ruled in McRae's favor, we address its merits given our authority to affirm the judgment on any grounds fairly supported by the record. See Adoption of Franklin, 99 Mass. App. Ct. 787, 802 (2021), citing Gabbidon v. King, 414 Mass. 685, 686 (1993).

 We agree with the judge that "[t]he conduct of subsequent owners of the two properties well after the conveyance by Del-Pinal of the two mortgage deeds and the foreclosure of the two mortgages casts no light on the intent of the parties at the time of the conveyance of the mortgages." It suffices to say that whether the plaintiffs and others chose to pursue a negotiated solution is of negligible import with respect to whatever the parties to the 

 Page 27 

Del-Pinal mortgage on 36 Allen Street intended many years earlier.

 Conclusion. We vacate the judgment and remand the matter for further proceedings consistent with this opinion.

 So ordered.

FOOTNOTES
[Note 1] Marilyn L. Petrowski. 

[Note 2] The record suggests that the parties assumed that because the underlying facts in the summary judgment record were largely undisputed, one of the cross motions for summary judgment necessarily would succeed. However, this controversy was not presented as a "case stated," in which reasonable inferences may be drawn in favor of either party. See Ware v. Hardwick, 67 Mass. App. Ct. 325, 326 (2006) (discussing standard of review for case stated). 

[Note 3] There are some references in the record to the possibility of vehicles reaching the 42 Allen Street portion of the parking area by driving over the curb. The viability, wisdom, and legality of doing so are undeveloped on the current record. McRae's counsel touched on this issue at oral argument, offering that the plaintiffs "are not driving like Priuses [sic]." We take counsel's comment as an acknowledgement that it is not viable for some types of motor vehicles to drive over the curb. To the extent that McRae intends to rely on the availability of this questionable alternative means of access, the issue will need to be developed on remand. 

[Note 4] In this area, Allen Street is only fifteen feet wide. The record reveals that vehicles in fact sometimes did park on the street, but only by improperly "mount[ing] the sidewalk to allow for adequate vehicle clearance." 

[Note 5] It appears undisputed that the special permit subsequently was issued, although the permit itself is not part of the record. 

[Note 6] The precise timing of when Del-Pinal began construction is not clear, but photographs in the record demonstrate that substantial work had been completed by May 3, 2007. 

[Note 7] When the letter was drafted, Del-Pinal had mortgaged both lots, but he retained the right (as discussed infra) to drive over 36 Allen Street onto 42 Allen Street. The planning board did not explain why an access easement nevertheless "must be recorded" or how -- given the then-current state of title -- this could have been accomplished. 

[Note 8] The original permit is not in the record, but its contents can be discerned from the ZBA's later decision amending it. 

[Note 9] It is not clear on what basis the ZBA reached this factual conclusion, given that the initial stated purpose of the project was to add a bedroom to each residential unit. 

[Note 10] Specifically, the ZBA stated that "[t]hough on-street parking is very limited in this area, Union Square and access to public transportation is within an easy walking distance. The proposed Green Line station is also within a close proximity to this property which will provide residents with additional public transportation alternatives." 

[Note 11] Although McRae referred to "my curb cut," it bears noting that the curb cut itself, along with the adjacent sidewalk, presumably lies on land owned by the city. 

[Note 12] The extent to which these residents continued to use the curb cut to reach their parking area, as opposed to driving over the curb, is not clear on the current record. 

[Note 13] There is some language in the case law that suggests that proof of reasonable necessity is an "important element to consider" but perhaps not an absolute prerequisite. Boudreau v. Coleman, 29 Mass. App. Ct. 621, 630 (1990). In the current appeal, we need not resolve whether there might be circumstances where a party could prove that an implied easement was created without demonstrating reasonable necessity. 

[Note 14] An implied easement must also be "reasonably ascertainable." Flax, 20 Mass. App. Ct. at 152. That requirement is easily satisfied in the case before us. 

[Note 15] Where an implied easement is recognized because of absolute physical necessity, it is often labeled in the case law as an "easement by necessity." See, e.g., Perry v. Nemira, 91 Mass. App. Ct. 12, 18-19 (2017); Bedford v. Cerasuolo, 62 Mass. App. Ct. 73, 76-79 (2004). By suggesting that implied easements and easements by necessity are distinct species, this taxonomy has led to great confusion. See Cerasuolo, supra at 76-78 (discussing such confusion). Properly understood, an easement by necessity is not a separate construct, but "a type of implied easement." Kitras, 474 Mass. at 139. See Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 284 Mass. 100, 104 (1933) (offering example of right of way to provide access to landlocked parcel as type of implied easement); Restatement of Property § 476 & comments a, g (1944) (same approach). 

[Note 16] Even where property is left landlocked, "parties opposing the easement may rebut the presumption [of an easement] by presenting evidence that at the time of conveyance the parties did not intend to create rights of access." Kitras, 474 Mass. at 140, citing Orpin v. Morrison, 230 Mass. 529, 531, 534 (1918). 

[Note 17] At the hearing on the cross motions for summary judgment, McRae's counsel stated that he personally "kn[e]w" that the units at 42 Allen Street were unoccupied when Del-Pinal bought them, but that he "[couldn't] prove it." 

[Note 18] The judge all but acknowledged that such an inference was reasonable when he stated at the motion hearing that not only was he "willing to assume that [Del-Pinal] used [the parking area at 42 Allen Street]," but also that he had "no doubt" that this occurred. 

[Note 19] A representation by Del-Pinal in the mortgage documents that there were no unrecorded encumbrances was accurate, given that no easement would have been created until the mortgage was granted. Furthermore, as noted, because Wells Fargo's title was defeasible and Del-Pinal remained in legal possession until foreclosure, as a practical matter, whether an implied easement existed up until that point was beside the point. See Mt. Holyoke Realty Corp., 284 Mass. at 106. Finally, even if it would have been better practice for the Wells Fargo mortgage documents to acknowledge the parties' intent that the owners of 42 Allen Street could continue to use the shared driveway, it is not entirely clear how the parties to the mortgage could have created this formal express easement. 

[Note 20] We do not mean to suggest that the ZBA's statements about such benefits, or its conclusion that Resnick had no legal right to use the shared driveway, had binding preclusive effect. Indeed, putting aside that the ZBA's findings and rulings were not essential to its 2009 special permit decision -- it having decided that Resnick's project would not add any bedrooms and therefore would not need off-street parking -- the ZBA's findings would not have had binding effect even in a direct judicial challenge to the special permit. See Shirley Wayside Ltd. Partnership v. Board of Appeals of Shirley, 461 Mass. 469, 473-474 (2012) (in zoning appeals, trial judge finds facts de novo). 

[Note 21] The plaintiffs argue that they were entitled to judgment as a matter of law, and they request that we determine that the judge erred by not granting summary judgment in their favor. Neither side has addressed whether the appeal of the judge's denial of the plaintiffs' motion for summary judgment, an interlocutory order, is properly before us. Compare LaChance v. Commissioner of Correction, 463 Mass. 767, 768 n.3 (2012), S.C., 475 Mass. 757 (2016) (reaching appeal of denial of defendants' cross motion for summary judgment, but on ground that doctrine of present execution applied), with Winbrook Communication Servs., Inc. v. United States Liab. Ins. Co., 89 Mass. App. Ct. 550, 550 (2016) (without discussing jurisdictional issue, framing appellate question as "whether the factual record on cross motions for summary judgment is adequate to permit either party to establish entitlement to judgment as matter of law"). In any event, the plaintiffs' claim to judgment in their favor as a matter of law at this stage in the proceedings would fail on the merits. Our review of the judge's denial of their motion would require us to view the summary judgment record in the light most favorable to McRae, including by drawing all reasonable inferences in his favor. For reasons analogous to those above, if the current record were thus viewed, we would conclude that a fact finder could have found that no implied easement was created. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.