NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-886

MANHUI LIU[1]

vs.

MYSTERY, LLC, & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The dispute before us has to do with where the property boundary between two commercial condominium units is located. Defendant Mystery, LLC (Mystery), which owns unit 202, claims that the existing devising walls separating that unit from unit 204[3] mark the property boundary. The plaintiff, who owns unit

_____

[1] Liu brought this action in her capacity as trustee of the 389 Main Street Trust, and she is listed as such in the operative complaint (referred to by the trial judge as the "second amended complaint"). According to Liu's appellate brief, however, she was substituted into the case in her personal capacity, and the judgment refers to her in that capacity. Nothing ultimately turns on this.

[2] Kirstin Amaral, Jonathan Chase, Lisa Gallatin, David Hornung, and Hamid R. Tabrizi, as trustees of the City Center Office Condominium Trust, and Breton LLC.

[3] Adding some confusion is the fact that the unit now known as unit 204, was originally known as unit 201. In 2004, unit 201 was redesignated unit 204, and vice versa. For simplicity, we

204, asserts a different boundary, which if accepted, would render her unit approximately 200 square feet larger. Following a bench trial, a Land Court judge ruled in the defendants' favor with respect to the location of the boundary. Judgment entered declaring that the boundary between the units "is the wall physically separating the Units as depicted on [an attached as-built plan]." Mystery was ordered to execute amendments to the master deed and trustee's certificate to reference that boundary.[4] On Liu's appeal, we affirm.

Background. The condominium was created in 1983. Originally, units 202 and 204 were held in common, and there were no devising walls separating them. There was, however, a boundary shown as a dashed line on a floor plan incorporated into the master deed. In 1999, while the units remained in common ownership, devising walls separating the units were constructed to accommodate a tenant who wanted to rent only one side of the combined space. However, the devising walls were

---

will refer to the unit now known as unit 204 as unit 204, even when referring to the period in which it was known as unit 201.

[4] Liu claimed that as a result of the judge's ruling, her unit became smaller than she and others may have previously thought, and that this had the effect that she overpaid her property taxes and condominium fees. The judge allowed her to add two counts to her complaint to try to recover any such damages. In the judgment, the judge ordered Mystery to pay Liu $2,447.59 in excess property taxes, while dismissing her claim that she paid excess condominium fees. Neither side has challenged this aspect of the judgment.

2

not built along the original intended boundary between the units. Notably, the geometric relationship between the originally contemplated boundary line and the devising wall as built is a complicated one. While the original contemplated boundary was a simple straight line, the devising wall takes many "jogs" that follow the interior rooms that were built out. In addition, the two lines cross each other. As a result, part of unit 202 as it was built out falls on the unit 204 side of the originally contemplated boundary, while part of the newly configured unit 204 falls on the unit 202 side of that line. The net effect was that unit 202 was about 200 square feet larger than was originally contemplated, and unit 204 about the same amount smaller. For years, this discrepancy was of no apparent consequence, because the two units remained in common ownership.

In 2004, the then-common owner of the two units, Breton LLC (Breton), sold Unit 202 to Mystery. However, the parties to that sale did not at that time follow the proper procedures set forth in the master deed for redrawing the unit boundaries in the event a unit was subdivided for the purpose of combining part of it with another unit. Instead, the 2004 deed for unit 202 referenced the floor plan attached to the 1983 master deed, which no longer accorded with how the units were built out.

3

In 2006, Breton advertised unit 204 for sale. The real estate listing erroneously stated that unit 204 contained 1,569 square feet of office space. After viewing the unit personally, and apparently finding it to her liking for her dental practice, Liu entered into a purchase and sale agreement to buy unit 204 and a 6.6842 percent share of the condominium's common areas. That percentage share corresponded with the square footage of the unit referenced in the listing, and both figures appear to derive from the size that unit 204 would have been if it were laid out consistent with the floor plans attached to the master deed.

Sometime prior to the scheduled closing, an attorney hired by Liu discovered the discrepancy between the boundary shown in the floor plan attached to the master deed, and the boundary established by the actual devising walls separating the units. In addition, a contractor that Liu had hired for the "fit-up" discovered that the actual size of unit 204 was about 200 square feet smaller than had been listed. As the judge noted, the discrepancies that Liu's lawyer and contractor had uncovered provided her with a basis for backing out of the purchase and sale contract. However, rather than asserting Liu's right to do so, her attorney focused instead on going through with the sale while first having the legal documents modified to conform to the conditions on the ground. The closing was delayed to allow

4

this to happen.[5]  The unit deed was modified to reflect that Liu was receiving only a 5.6 percent share of the common property, a percentage that apparently corresponded with the parties' understanding of the reduced square footage that she was obtaining.[6]  In addition, a new floor plan showing the as-built boundaries of unit 204 was prepared, and Breton took steps to modify the master deed to reflect the new boundary.  As the judge found, Liu's attorney was aware of and deeply involved in these efforts; indeed, the attorney was the one insisting that the legal documents reflect the conditions on the ground and that this be cleared up prior to the closing.  The amendments to the master deed to clarify the boundaries of unit 204 were recorded prior to the recording of the unit deed that Liu had accepted at the closing.

Alas, the joint efforts to put things in order did not meet the procedural exactitude required for amendments to the master deed, e.g., with respect to the percentage of unit owners

---

[5] Liu knew from her attorney that the closing had to be delayed, but she claimed that the attorney -- who had died by the time of trial -- never told her why.  The judge declined to say whether he believed such testimony, because he concluded that the attorney's knowledge could be attributed to her client regardless.

[6] The judge accepted Mystery's position that unit 204 included 1,385 square feet, but ultimately ruled that the percentage share of common space that Liu had obtained was 5.9001 percent. The discrepancy between that percentage share, and the slightly lower figure included in Liu's deed, lies unexplained.

necessary to execute such an amendment. Accordingly, the judge ruled that the amendments were ineffective. Based on this, Liu now argues that she is entitled to unit 204 as set forth in the floor plans attached to the 1983 master deed, regardless of whether she had understood at the time that she was buying the unit as it had been built out.

Discussion. As her counsel acknowledged at oral argument, Liu is charged with her closing attorney's knowledge of the discrepancy between the layout of unit 204 as originally conceived and its layout as actually built. See One-O-Six Realty, Inc. v. Quinn, 66 Mass. App. Ct. 149, 154 (2006). In addition, she can be charged with knowledge of obvious site conditions that existed at the time of purchase, including the jagged devising wall that separated the unit she was purchasing from unit 202. See Lavoie v. McRae, 102 Mass. App. Ct. 14, 23 (2022), quoting Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 284 Mass. 100, 107 (1933) (party acquiring title "can be charged with knowledge of 'obvious and unescapable' site conditions"). Nothing in the record suggests that at the time of the closing, Liu thought that she was buying a unit that had a boundary that was different from the existing devising wall she herself had observed. This also appears to be supported by

6

her postclosing conduct.[7]  Cf. <u>Reagan</u> v. <u>Brissey</u>, 446 Mass. 452, 461 (2006) (looking to postclosure conduct as evidence of parties' intent).

The judge ruled that under these circumstances, Liu knowingly relinquished her right to claim that she had purchased unit 204 as originally laid out in the 1983 floor plan (so long as the underlying paperwork was modified to conform to her expectations).  Whether Liu waived her claim in this manner is a question of fact.  See <u>KACT, Inc</u>. v. <u>Rubin</u>, 62 Mass. App. Ct. 689, 695 (2004).  We discern no clear error in the judge's finding that she did so.  To the extent she claims that the trial evidence did not meet the higher burden of proof

_____

[7] Nothing before us indicates that prior to the filing of her complaint in 2018, Liu took any action that suggests she was claiming ownership of a portion of unit 202, or that part of the space she was occupying actually belonged to Mystery.

7

applicable to implied waiver, Liu has not provided a transcript of the proceedings necessary for us to evaluate such a claim.[8]

Judgment affirmed.

By the Court (Milkey, Blake & Sacks, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:   October 27, 2023.

---

[8] We additionally note that the judge's ruling is potentially supportable on at least one alternative ground.  All signs indicate that both parties to the 2007 closing (Breton as seller and Liu as buyer) understood that Liu was purchasing unit 204 as built.  Accordingly, reformation of the unit deed based on mutual mistake presents an obvious potential alternative ground for rejecting Liu's claim.  Since we do not rely on that ground, we need not resolve the potential import of Howell v. Glassman, 33 Mass. App. Ct. 349, 352 (1992) (reformation of unit deed not available where proposed amendment to unit deed would conflict with amendment to master deed).

[9] The panelists are listed in order of seniority.