NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-949

JEAN A. WOJCIK & another[1]

vs.

JAMES LOVETT & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In this dispute between neighboring owners of lakefront property in East Brookfield, Jean and David Wojcik (the Wojciks) claim that James and Lee Ann Lovett (the Lovetts) trespassed onto their land by using and expanding a right of way that leads to the Lovett property.  Following trial, the Land Court judge declared that the Lovetts have an implied easement in the right of way and, accordingly, no trespass occurred.  We affirm.

Background.  There are four neighboring properties that are relevant to this dispute:  the Wojcik property, Lovett property, Rueli property, and Jennette property.  The Wojcik property lies

---

[1] David A. Wojcik.

[2] Lee Ann Lovett.

to the south of the three other properties and is bordered on the west by Lake Lashaway.  The Lovett property lies to the northwest of the Wojcik property and is also bordered on the west by Lake Lashaway.  To the northeast of the Wojcik property is the Rueli property, and the disputed right of way in this case exists on the boundary between those two properties. Directly north of the Wojcik property is the Jennette property, which has the Lovett property to its west and the Rueli property to its east.

Prior to 1912, all of the properties relevant to this dispute were owned by Milo Drake.  There was an easement agreement in 1915 between Drake and subsequent property owners in the relevant area that was recorded in the registry of deeds and granted an access route to a public highway.  The trial judge found that the disputed right of way was included in this easement agreement.  The disputed right of way is fifteen-feet wide; it runs on the boundary between the Wojcik and Rueli properties, with half (i.e., 7.5 feet) of the right of way located on each property, and it connects to the Lovett property.  The disputed right of way is one of two separate rights of way that make up Bennett Street.

From 1937 until 1966, a portion of the Wojcik property (on which half of the disputed right of way was located) and the

2

entire Lovett property were held in common ownership by various members of the Dexter family. In 1966, Ida Dexter conveyed a portion of the Wojcik property to her son Henry and his wife Dorothy for less than 100 dollars. This deed separated the Lovett property from the northern Wojcik property that abutted the Rueli property, but did not contain express language reserving an easement in the 7.5 feet of Bennett Street that fell on the property she was conveying and instead quoted the language of the deed by which Ida had acquired the land: "[s]ubject to the rights of others to use the common right of way and to use Drake's Lane as a road." Jean Wojcik acquired title to the current Wojcik property in 1999, and Lee Ann Lovett acquired title to the current Lovett property in 2005.

Before 2018, the disputed portion of Bennett Street had existed as an eight-to-ten-foot-wide dirt road, and the Lovetts had used it for access to their property without objection from the Wojciks. In February 2018, the Lovetts began construction on their house, renovating it from a summer home to a year-round home. In connection with this construction project, the Lovetts' contractor performed excavation on Bennett Street in late 2018, without seeking the Wojciks' permission. The contractor widened the disputed right of way, filled the dirt surface with gravel, and increased its width to approximately

3

twelve to fifteen feet.  In the course of widening the roadway, a strip outside the limits of the disputed right of way, no more than four feet wide, was disturbed, although the judge noted that at a pre-trial view, the width of graveled surface was not noticeably wider than the 15-foot right of way in any location.

In 2019, the Wojciks commenced this action against the Lovetts seeking injunctive relief based on a claim of trespass and for conversion, and they also sought a declaration that the Lovetts have no rights over the 7.5 feet of Bennett Street located on their property.  Cross motions for summary judgment were heard and denied.  The judge viewed the disputed right of way and surrounding properties on September 12, 2022, and held a trial the following day.  One title expert for each party testified at the trial, and forty-seven exhibits were admitted. Following trial, the judge ruled that the Lovett property had the benefit of an implied easement over the disputed portion of Bennett Street (including the 7.5-foot half on the Wojcik property), and that no trespass was caused by the Lovetts' excavation work.  He entered a declaration to that effect, dismissed the claims for injunctive relief and conversion (the conversion claim for lack of jurisdiction), and dismissed one of the plaintiffs for lack of standing.  The Wojciks appealed.

Standard of review. Upon appeal, we accept the judge's findings of fact unless they are "clearly erroneous" . . . and "do not review questions of fact if any reasonable view of the evidence and the rational inferences to be drawn therefrom support the judge's findings." Martin v. Simmons Properties, LLC, 467 Mass. 1, 8 (2014), quoting Millennium Equity Holdings, LLC, v. Mahlowitz, 456 Mass. 627, 636-637 (2010). "We uphold the findings of a judge who saw and heard the witnesses unless we are of the 'definite and firm conviction that a mistake' has been made." Martin, supra, quoting Millennium Equity Holdings, 456 Mass. at 637. See Bernier v. Fredette, 85 Mass. App. Ct. 265, 269 (2014), quoting Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 510 (1997) ("So long as the judge's account is plausible in the light of the entire record, an appellate court should decline to reverse it."). We review the judge's conclusions of law de novo. Martin, supra at 10, citing Trace Constr., Inc. v. Dana Barros Sports Complex, LLC, 459 Mass. 346, 351 (2011).

Discussion. Because no trespass can result from the Lovetts' usage of Bennett Street or placement of gravel thereon if they held an easement over the portion at issue in this case, see Glenn v. Poole, 12 Mass. App. Ct. 292, 296 (1981), the key question is whether the Lovetts benefit from an easement by

5

implication over that portion of Bennett Street which falls on the Wojciks' land.[3]  The judge concluded that they do because the presumed intent of the Lovetts' predecessors in title was to reserve their rights to continue using the entire street in that area, and use of the right of way was reasonably necessary.  We agree.

The party "claiming the benefit of an easement bears the burden of proving the existence of that easement on the servient estate."  Hickey v. Pathways Ass'n, Inc., 472 Mass. 735, 753-754 (2015).  Easements by implication[4] are "created when land under single ownership is severed and the easement is reasonably necessary for the enjoyment of one of the parcels."[5]  Post v.

---

[3] Although the judge did find that a narrow strip of land on the Wojciks' property was disturbed when the right of way was widened, he also found that the disturbance was transitory and there was no trespass existing or persisting at the time of trial.  Nor did the judge, having viewed the properties, find that a rainstorm that caused some gravel to shift outside the easement constituted a trespass.  "To the extent the judge's factual findings were based in part on his view of the parties' . . . parcels, there was no error."  Talmo v. Zoning Bd. of Appeals of Framingham, 93 Mass. App. Ct. 626, 629 n.5 (2018).  We discern no clear error in the judge's conclusions.

[4] Easements by implication are also known as implied easements.  See Lavoie v. McRae, 102 Mass. App. Ct. 14, 19 (2022).

[5] When a party is able to demonstrate that an implied easement is absolutely necessary for the use and enjoyment of his or her property, where, for example, the parcel is landlocked, courts recognize an "easement by necessity," a type of implied easement.  Lavoie, 102 Mass. App. Ct. at 20 & n. 15.

6

McHugh, 76 Mass. App. Ct. 200, 205 (2010), quoting Silverlieb v. Hebshie, 33 Mass. App. Ct. 911, 912-913 (1992).  "Although mere 'convenience' -- even 'great convenience' -- does not rise to the level of reasonable necessity, something significantly short of 'absolute physical necessity' can suffice" (citation omitted).  Lavoie v. McRae, 102 Mass. App. Ct. 14, 21 (2022).  Whether an easement by implication exists is a matter of the presumed intent of the parties, which is "to be gathered from the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable" (citation omitted).  Boudreau v. Coleman, 29 Mass. App. Ct. 621, 629 (1990).  "The ultimate touchstone for whether an implied easement should be recognized is the presumed intent of the parties based on all the circumstances, not a mechanistic application of the rules of thumb."  Lavoie, supra at 22.

Before we consider whether an implied easement existed, we first review the history of the disputed right of way, which bears on the intent of the Lovetts' predecessors.  The judge

---

"Where absolute physical necessity cannot be shown, the propounding party must present other evidence that demonstrates that the parties intended to create such an easement at the time ownership was severed, even though no such easement was recorded."  Id. at 20-21.

determined that the disputed right of way was created by the 1915 easement agreement, and that 1920 deeds from the heirs of Drake to the Lovetts' predecessors gave the Lovetts an easement over the entirety of the disputed portion of Bennett Street. Noting that none of the documents prior to the 1920 deeds describe the location of the disputed right of way with precision, the Wojciks assert that the right of way referenced in those documents was not the disputed right of way, but instead, the Jennette-Rueli right of way, which runs between the Jennette and Rueli properties. In his decision, the judge used reference points from the time period, including a cemetery, a development, and existing properties, to identify where the easement was located. We find the judge's decision reasonable and based on rational inferences that carefully considered the deeds submitted into evidence and the expert testimony. Accordingly, we agree with his conclusion that "the recorded documents in the record show that Drake (and his heirs), as the original owner of all the properties subdivided in his neighborhood, and Upham, as the successor to Drake for many of these properties, had a plan to grant and preserve access to all the owners on both sides of the continuous right of way to the public highway as the land was subdivided and conveyed out," and that "rights on the disputed [right of way] were granted to

. . . the Lovetts' predecessors in title by deeds from the heirs of Drake dated October 16, 1920."

We turn to whether the easement was extinguished by common ownership. We agree with the judge that the Lovetts' easement over the 7.5 feet of Bennett Street running on the Wojcik property was extinguished when a portion of the Wojcik property and the Lovett property were first held in common ownership in 1937. That is because a property owner cannot have an easement over his or her own estate. See Busalacchi v. McCabe, 71 Mass. App. Ct. 493, 497-498 (2008).

Common ownership of  the disputed 7.5 feet of Bennett Street was severed when Ida Dexter conveyed her ownership over the part of the Wojcik property containing the street to her son and his wife in 1966 for "less than One Hundred ($100.00) Dollars." The parties agree that this conveyance did not expressly reserve rights for the Lovett property over the 7.5 feet of Bennett Street, and instead stated that the conveyance was "[s]ubject to the rights of others to use the common right of way and to use Drake's Lane as a road."[6]  Nevertheless, the judge concluded that Ida Dexter's remaining land, the Lovett property, benefitted from an implied easement over the 7.5 feet

_____

[6] Neither party argues that the language in the deed is sufficient to revive Ida's right of way for the benefit of the Lovett property and, we accordingly do not consider the issue.

9

of Bennett Street that she conveyed to her son and his wife, because it was her presumed intent for this to happen and the easement was reasonably necessary. The Wojciks challenge this conclusion.

We first address the presumed intent of Ida Dexter. When the Wojcik property and the Lovett property were held in common ownership, only the easement rights running with those properties, to one-half of the disputed portion of Bennett Street, were extinguished. The express right of those properties' owner (Ida) to use the other one-half of Bennett Street falling on the Rueli property, or the rest of the street as described in the easement agreement, was not affected. This is because what is now the Rueli property was not a part of the common ownership, and existing easement rights held by the Dexters persisted. That means that in 1966, when common ownership was severed, Ida Dexter retained for the Lovett property an easement over at least the 7.5 feet of Bennett Street that falls on the Rueli property -- that portion of the easement did not need to be revived. Given these facts, we agree with the trial judge that it would have been "inconceivable" for Ida Dexter to have intended to convey part of the Wojcik property to her son and his wife for a nominal amount of money and, in doing so, restrict herself from using

the one-half of Bennett Street that she previously owned in fee. Rather, as the judge concluded, Ida Dexter's presumed intent was to maintain the status quo by reserving her ability to traverse Bennett Street in its entirety.

We next address whether the easement was reasonably necessary. The Wojciks argue that the disputed right of way was not reasonably necessary for Ida Dexter at the time common ownership was severed, and therefore an implied easement cannot be found.[7] They point to the Jennette-Rueli right of way and the Lovett-Jennette right of way (which allegedly travels between the Lovett and Jennette properties) as evidence that in 1966 the Lovetts' predecessors had alternative means of access other than the disputed right of way. We address each proposed alternative means of access in turn.

The trial judge credited the testimony of the Lovetts' expert that the Jennette-Rueli right of way was not built on the ground at the time of severance and that the Lovetts'

---

[7] The Wojciks argue that it was improper for the judge to find an implied easement because the Lovetts did not plead the issue or raise it at trial. The case they cite, National Med. Care, Inc. v. Zigelbaum, 18 Mass. App. Ct. 570, 578-579 (1984), is inapposite because it involved the affirmative defense of estoppel, not an implied easement. The Wojciks could have hardly been surprised that the judge analyzed the issue of implied easement where their complaint sought a declaration of "the state of the boundaries and easements affecting the Wojcik and Lovett properties."

11

predecessors were never granted any rights over that way. The judge found the Lovetts' expert's testimony credible because he identified where the public highway at issue in the deeds was located and began his title search at an earlier date. The Wojciks' expert conceded that he did not know whether the Jennette-Rueli right of way was laid out on the ground in 1920, and that the 1920 deeds might have referenced the disputed right of way. The judge's decision to credit the testimony of the Lovetts' expert, including that expert's interpretation of the relevant deeds and easement agreements, is plausible in light of the entire record. We are not "left with the definite and firm conviction that a mistake has been committed" (citation omitted). White v. Hartigan, 464 Mass. 400, 414 (2013).

The second alternative means of access advanced by the Wojciks is the Lovett-Jennette right of way, which travels north. In three of the 1920 deeds from the heirs of Drake, there is reference to an easement over a right of way that allowed other land owners to access a public highway. The judge found that these deeds referred to the portion of Bennett Street disputed in this case, and also that the public highway was located south of all of the properties. The Wojciks' expert admitted that it was possible that the disputed right of way needed to go south to access the public highway. Because the

12

Lovett-Jennette right of way would not have effectively provided access to the public highway to the south, its existence did not prevent the disputed right of way from being reasonably necessary to access the highway at the time common ownership was severed.

The judge found nothing in the record suggesting that any route other than the disputed right of way was used to travel from the Lovett property to the public highway at the time Ida transferred the northern Wocjik property to her son, and that the parties would have recognized that Ida intended to still use the disputed right of way. A. III/247. In the end, we agree with the judge's findings that the easement over the entire disputed portion of Bennett Street was reasonably necessary because it "derived from an established pattern of prior use," see Town of Bedford v. Cerasuolo, 62 Mass. App. Ct. 73, 78 (2004), the Lovetts' predecessors were never granted any rights in the Jennette-Rueli right of way, and the Lovett-Jennette right of way would not have provided effective access to the public highway located to the south of the property.[8] Because

--------

[8] There is no Massachusetts caselaw that supports the Wojciks' alternative argument that a landlocked property on navigable water does not reasonably need an easement by implication through one of the surrounding properties. Moreover, an implied easement turns on reasonable necessity -- not the absolute necessity generally present when recognizing

13

the presumed intention of Ida Dexter at the time of severance was to maintain use of that portion of Bennett Street and an easement over the right of way was reasonably necessary, we affirm the judge's finding of an implied easement.  Accordingly, we also affirm his declaration that the Lovetts have an implied easement in the 7.5 feet of the right of way at issue in this case, and his decision to dismiss the claim of trespass.[9]

Judgment affirmed.

By the Court (Neyman,
Brennan & Toone, JJ.[10]),

*Paul Little*

Clerk

Entered:   September 11, 2024.

---

easements by necessity.  See Lavoie, 102 Mass. App. Ct. at 20-21.

[9] Because the judge's decision was not dependent on the inclusion of David Wojcik as a plaintiff, we need not address the Wojciks' argument that he was improperly dismissed as a party; we need not address the dismissal of the conversion claim because it is not argued in the brief.  Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).  The Lovetts' request for an award of attorney's fees is denied.

[10] The panelists are listed in order of seniority.

14